## CINCINNATI CAMP MEETING ASSN. OF THE METHODIST EPISCOPAL CHURCH, Appellee v. DANBY et, Appellants.

Ohio Appeals, First District, Clermont County.

No. 155.   Decided October 22, 1943.

Oliver M. Dock, Cincinnati, and Charles Tatgenhorst, Cincinnati, for appellee.

Nichols, Speidel & Nichols, Batavia, for appellants.

**OPINION**

By ROSS, P. J.

The defendants appeal on questions of law from a decree in favor of the plaintiffs entered by the Court of Common Pleas of Clermont County.

The defendants are the owners of certain parcels of real estate which they procured directly or indirectly from the plaintiff. The defendants are also members of the plaintiff association.

All the deeds to the defendants and those of their predecessors in title contained a stipulation that the particular conveyance was made subject to the restrictions that the premises were to be used for Camp Meeting Association purposes and to be used only in accordance with the constitution and by-laws, rules, and regulations of the association, as the same then existed or might thereafter lawfully be made, and to be used in no other way and for no other purpose.

The charter of the association provided:

"III. The purpose for which said Corporation is to be formed is not for profit, but to provide succession to a former Board of Trustees composed of the corporators herein named, and support and maintain perpetually, Religious Camp Meetings in strict accordance with the policy, established usage, and Discipline of the M. E. Church, and such other meetings as shall be approved by the Board of Trustees, so that the members and friends of said Church may assemble once annually, or oftener if desired, forever, for Religious Worship, in either the English or German languages.

"And to hold sacredly in trust forever for the M. E. Church, the money, property and values of every kind heretofore donated, contributed, collected, and held for Camp

Meeting purposes, and receive and hold in like perpetual trust, all Gifts, Devises, Bequests, Grants, Donations, Subscriptions and acquisitions of every kind hereafter made, and all lands, buildings and property, personal and real, already acquired, or which may hereafter be acquired as necessary or convenient to the successful and proper conduct of said Religious Camp Meetings, and the furnishing of convenient and desirable tents, cottages, and Summer homes, roads, walks, light, water and all other necessaries, conveniences and accommodations upon the Camp Grounds of the Association at Loveland, Ohio, for members and friends of the M. E. Church, who may regularly, or from time to time, attend said Camp Meetings for religious worship, and desire such accommodations and Camp Meeting homes."

From the evidence it appears that for some considerable period camp meetings were held upon the land of the association. A hotel was operated and a large auditorium was provided for use of those attending the meetings. Later, Chautauqua courses were conducted on the grounds. For some fifteen years, however, no such activity has been associated with the property involved. During the period, the association has conveyed lots to the defendants upon which residences existed or have been built. No deed, however, was made to anyone, not a member of the association.

There can be no question that the whole property and appurtenances were originally designed for use in the warmer months in the year. From time to time those who occupied the residences have continued to reside there during the entire year. The property of the association is enclosed and entrance to the same is obtained through two gates which can be locked. A watchman or caretaker of the property of the association is employed throughout the year. The hotel has been torn down and many of the facilities for holding a camp meeting or gathering of any considerable number of people have fallen into disrepair.

A number of Trustees of the Association are elected each year and the entire body of Trustees constitute the governing body of the association.

As early as 1904 the trustees adopted a by-law, providing:

"Resolved that the By Laws of the association be amended by the addition of the following—Property owners will not be allowed to use or rent their cottages for use as tenements by

persons or families who do not occupy them for camp meeting association purposes or for summer homes—and it is hereby declared that such use by persons permanently occupying cottages as aforesaid is contrary to the constitution of this association."

Later a resolution was adopted by the trustees to the following effect:

"Whereas the declared purpose of this Association, as expressed in its Charter and Constitution, is to maintain camp-meetings and other religious services, and convenient and desirable summer homes on its camp-ground at Epworth Heights, Clermont County, Ohio, be it resolved, that this board adopts and declares as a standing rule of this association, that no person, firm, or corporation shall maintain a boarding-house or keep boarders on said camp ground, except during the summer months, and then only by special permission had upon application to this board in each particular case."

Again the minutes of the trustees, September 15th, 1911, show:

"After a discussion of the necessities, and so on, of the Camp Ground, it was decided to have two signs made as follows—POSITIVELY NO PASSING THROUGH—CLOSED FOR THE SEASON, one to be put on the front gate and the other at the entrance of the back road."

And, again, on October 20th, 1913:

"On motion, the season as recognized by the Board is from June 1st to October 1st. If lighting is desired previous to June 1st or after October 1st, the expense must be borne by the cottagers."

Thereafter, appropriate action was taken by the Board to enforce the closing of the grounds from December 1st to April 1st. The gates were locked, and the locks broken by the defendants, who claim first, that this action of the plaintiff association is a violation of their rights as property holders; and second, that the regulation is an unreasonable interference with their rights as members of the association. Both of these contentions are largely based upon the premise that the

original purposes of the association have been in fact long since abandoned.

The evidence is clear that for many years no effort has been made to use the premises of the association for the purposes for which the property was originally acquired.

Appropriate action could be taken by the members of the association to secure the release of the property if a proper showing was made. No such action has been taken. The defendants seek to obtain the same result by force, and have avowed their intention to continue to use their premises in violation of the regulations adopted by their trustees.

As to the first contention, the defendants received and accepted deeds containing a definite and specific stipulation in effect providing that the grantees would hold their property subject to the regulations of the trustees of their association. This is an answer to the first contention that the rights of the defendants as property holders have been violated.

The stipulation in the deeds was more than a mere building restriction. The grantees from the association were members of the grantor, and as such they could not hold the property and at the same time deny their membership and the obligations and limitations incident thereto. The act of the association through its trustees is their act and they are estopped to deny the effect of this stipulation in their deeds and their membership in the association. **Boone v Century Athletic Club, 49 Oh Ap 155.**

As was pointed out by the trial judge, the defendants have an effective remedy within their association. They cannot now deny the effect of stipulations in their deeds, which they accepted, simply because now it suits their convenience to do so.

Is the regulation so unreasonable as to constitute an abuse of the discretion lodged in the trustees by the rules of the association and the stipulations in the deeds?

The association is bound to protect the property committed to the care of the trustees. Fire hazards are commonly known to increase with cold weather. Roads are subject to heavier wear in winter than they are in summer.

We are unable to find that just reason does not support the action of the trustees.

Courts will not interfere with the internal management of a corporation not for profit in the absence of proof that the

managing officers are acting in excess of their corporate power, or that they are guilty of collusion or fraud. "The court will not interfere to restrain the exercise of discretion on the part of the managing agent in the absence of fraud or collusion. No matter how clearly it may appear that they are mistaken as to the best course to pursue." **10 O. Jur., 1150.**

We do not find the equities with the defendants.

It is apparent that they are now met with a situation which must have been a patent possibility, if not a certainty, when they became members of the association and took the deeds containing a caveat, warning them of that which has occured. They have a remedy if enough members of their association agree with their position.

The decree of the Court of Common Pleas of Clermont County is affirmed.

MATTHEWS and HILDEBRANT, JJ., concur.