ZAVAKOS, Appellee,

v.

ZAVAKOS ENTERPRISES, INC. et al., Appellants.

[Cite as *Zavakos v. Zavakos Enterprises, Inc.* (1989), 63 Ohio App.3d 100.]

Court of Appeals of Ohio,
Montgomery County.

No. 11357.

Decided May 26, 1989.

*Coolidge, Wall, Womsley & Lombard Co., L.P.A., Jacob A. Myers* and *Roger J. Makley,* for appellee.

*Thompson, Hine & Flory, Paxton & Seasongood Office, Earle Jay Maiman* and *Louis F. Solimine,* for appellants.

*Per Curiam.*

This case is an appeal of the trial court's judgment which overruled the appellants' complaint for a permanent injunction and motion for contempt for violation of a temporary injunction. The issue arose when Christ Zavakos, appellee, filed a shareholder's derivative suit against appellants James Zavakos and Zavakos Enterprises, Inc., the corporation which is the subject of the within appeal. After the initiation of the shareholder's suit, James Zavakos filed a request for an injunction pursuant to R.C. 2727.02 which alleged that certain proposed actions of Christ Zavakos should be enjoined. Christ had developed two contracts and planned certain other acts which involved a sale of stock to Christ from Maria (Zavakos) Alex, another minority shareholder. The sale would make Christ Zavakos a majority shareholder and give him effective control of the corporation. Zavakos Enterprises shares are owned at the present time by Christ Zavakos (thirty percent), Maria (Zavakos) Alex (thirty percent), James Zavakos (thirty percent) and Julia Zavakos (ten percent). Julia Zavakos is the mother of James, Christ and Maria.

The trial court issued a temporary injunction, restraining Christ Zavakos "from consummating, performing upon or taking any action in furtherance of the contracts attached as exhibits to the Motion for Temporary Restraining Order." The temporary injunction was filed on December 6, 1988. On December 7, 1988, a stockholder's meeting was called by Christ Zavakos wherein the number of directors was increased from four to five and some new directors were elected.

Thereafter, a hearing was held on the issue of the injunction, which by agreement of the parties was a hearing on the merits of a permanent

injunction. See Civ.R. 65(B)(2). The trial court also heard the motion of James Zavakos to hold Christ in contempt of court for calling the December 7, 1988 stockholders meeting, which was claimed to violate the temporary injunction issued December 6, 1988. The trial court overruled the request for a permanent injunction and also overruled the request to find Christ in contempt. From that decision, appellants perfected an appeal.

The appellants present two assignments of error. The first assignment of error is:

"The trial court erred as a matter of law in denying appellants' motion for permanent injunction."

At the outset, we note that the patent objective of the two contracts, and requisite corporate actions to complete their provisions, is that Christ Zavakos seeks to become the majority shareholder of the corporation and gain effective control of the company. Although we recognize the purpose of the contracts, we must determine whether the trial court should have, as a matter of law, granted the injunction as the objective of the contracts alone is not sufficient to warrant injunctive relief and prohibit their consummation.

■■■ An injunction may be granted only upon the showing, by clear and convincing evidence, that the movant is entitled to an injunction. See *Southern Ohio Bank v. Southern Ohio Savings Assn.* (1976), 51 Ohio App.2d 67, 5 O.O.3d 183, 51 N.E.2d 296. Further, an injunction should not be granted where there is an adequate remedy at law. An injunction is warranted only where the act sought to be enjoined would produce great or irreparable injury to the plaintiff. R.C. 2727.02. We must therefore examine the provisions of the contracts in order to ascertain whether irreparable harm would result if either contract were completed.

### The Share Purchase Agreement

■■■ The Share Purchase Agreement contemplates a recapitalization of the corporation including issuance of a preferred stock dividend. It also anticipates formation of an employee stock ownership plan ("ESOP"), which would ultimately purchase 155 shares of Maria Alex's common stock and 775 shares of her preferred stock. In addition, Christ would individually buy 620 shares of Maria's common stock, which would make Christ majority shareholder of the common, voting stock. As ESOP trustee, Christ will control the majority of the preferred shares, which are also voting shares. See Irrevocable Proxy.

According to the Share Purchase Agreement, Christ is the purchaser of Maria's 775 preferred shares and 155 common shares that are destined for purchase by the ESOP, and Christ is to borrow the funds required for the

purchase. Christ will then assign his rights and obligations under the Share Purchase Agreement to the ESOP, thereby encumbering the ESOP with debt.

The Share Purchase Agreement allows for the same offer to purchase shares to be made to James and Julia Zavakos or for an offer to spin off part of the corporation through disbursement of some of the corporate assets to James and/or Julia. The spin off could be accomplished through arbitration. Maria was given an option to purchase two properties of the corporation at a stated price (1987 appraisal).

With regard to recapitalization, we note that such act may be accomplished *only* by a two-thirds vote of the shareholders. R.C. 1701.71 (two-thirds vote required to amend articles of incorporation). Achievement of the primary purpose of the Share Purchase Agreement requires recapitalization of the corporation, which could be vetoed by either James or Julia as Christ and Maria together do not have two thirds of the voting stock. Therefore, by voting against a proposed recapitalization, James or Julia could prevent its occurrence and thus effectively frustrate the primary purpose of the Share Purchase Agreement. The other provisions of the Share Purchase Agreement require a vote of the board of directors. The board would vote on the sale of property to Maria, establishing the ESOP, borrowing any funds, and transactions involved in any spin off. Any shareholder would have a remedy at law through a shareholder's derivative suit against any director who voted for an action detrimental to the corporation. Regarding the ESOP, appellants admit that an ESOP can be instituted for legitimate corporate purposes. *Buckhorn, Inc. v. Ropak Corp.* (D.Ohio 1987), 656 F.Supp. 209. In *Buckhorn,* the corporation adopted an ESOP in response to a hostile takeover bid, wherein the shares held by the ESOP were placed under control of the directors or the management. In this case, there is no evidence that the ESOP is being created for any purpose which would be harmful to the corporation or the value of the shares held by the shareholders. An ESOP is particularly authorized under Ohio corporate law. R.C. 1701.17 and 1701.35. We do not find that the institution of an ESOP *per se* results in a breach of fiduciary duty owed by Christ Zavakos to the other shareholders of the corporation, which would cause irreparable harm that should be enjoined.

### The Put Option

The Put Option provides that Christ Zavakos has an option to buy 575 shares of Maria's common stock (and a corresponding number of shares issued from any stock dividend in the future). It contemplates the corporation also offering Maria an option to buy 200 of her shares at a stated price. The Put Option includes an attached form of a promissory note from Christ to

Maria and a Pledge Agreement which gives Christ's shares in Zavakos Enterprises and those he would purchase from Maria as collateral on the promissory note. The Pledge Agreement anticipates several future business actions by the corporation, among them: that the corporation will not issue any additional shares without the consent of Maria, the company would only pay nominal dividends for the next twelve years unless given permission of Maria, no imprudent bonuses or salary increases, no preferential sales of company assets, no merger with any other company, and continued existence as a corporation. All of the assurances in the Pledge Agreement require action by the board of directors; Christ cannot accomplish any of the acts alone. While Christ may effectively "control" the board, each director separately votes and each director is subject to a fiduciary duty to the shareholders of the corporation to vote accordingly. Failure to maintain a director's fiduciary duty could result in a shareholder's suit against any director who breaches the duty. The above provisions contained in the Pledge Agreement attached to the Put Option do not necessarily create irreparable harm to the corporation or its shareholders. The Put Option does contemplate that the corporation offer Maria Alex an option to purchase 200 of her shares at a certain price. However, in the absence of evidence that other stockholders would not also be given the same opportunity, mere execution of the Put Option contract would not be a breach of the fiduciary duty of a director to other stockholders. Similarly, the pledge of Christ's *own* shares, or those he proposes to purchase from Maria, as collateral for a loan or for the performance of future acts does not breach his fiduciary duty to the other shareholders.

The appellants claimed that Christ Zavakos breached his fiduciary duty as a stockholder to the other stockholders. *Estate of Schroer v. Stamco Supply, Inc.* (1984), 19 Ohio App.3d 34, 19 OBR 100, 482 N.E.2d 975. In *Estate of Schroer*, the subject corporation, Stamco, was controlled by the Grimme family. The corporation repurchased the shares of two members of the controlling family, in two separate purchases, without giving notice to any other shareholders or without giving any other shareholders the opportunity to sell their shares to the corporation on the same terms. After a minority shareholder demanded the same opportunity to sell her shares and was refused, she brought a shareholder's derivative action. The members of the controlling family were found to have breached their fiduciary duty toward the other shareholders. In this case, we do not find that any other shareholders would have been denied any opportunity to sell their shares at a fair benefit because the event has not yet occurred and because there is no evidence in the record with which to indicate that other stockholders would not be given the same opportunity to sell shares to the corporation.

■ We agree with the trial court that the appellants failed to show by clear and convincing evidence that the corporation would suffer great or irreparable injury if Christ Zavakos executed either contract. The only certain outcome of the contracts would be for Christ to become the majority shareholder of the corporation. James could retain the same number of shares in any plan sought to be enjoined. James is not without a remedy if in the future his stock or ownership interest in the corporation is diluted or impaired. A remedy at law by way of a shareholder's derivative suit could be brought *if* any future actions of any director or shareholder result in damage. We are not prepared to hold that the purchase of one minority shareholder's stock by another minority shareholder *alone,* without clear and convincing evidence of great or irreparable harm to the party requesting the injunction, is sufficient to warrant judicial interference through injunction of corporate activities before their enactment.

Obviously, James may be personally disadvantaged by the sale of Maria's shares to Christ, and, given the tenor of the pleadings and allegations in the record, may be removed from his position of employment with the corporation. An employment relationship does not necessarily arise out of stock ownership and James, as an employee, would have an adequate remedy at law through an action for wrongful termination if an employment contract were breached. That event, however, or any of the other possible corporate actions which could arise from the execution of the contracts in question, have not been shown to be detrimental to the corporation. A breach of fiduciary duty results when a director or shareholder misuses his power to promote his interest at the expense of corporate interests. The record does not indicate that the interest of Christ Zavakos in participating in the plans to purchase Maria's shares of stock would be a detriment to the corporation or to other shareholders, as shareholders. The first assignment of error is overruled.

Appellants' second assignment of error is:

"The trial court erred as a matter of law in denying relief to the appellant[s] for appellee's contempt of court."

■ A decision of the trial court in a contempt proceeding is reversible only upon a finding of an abuse of discretion. *State, ex rel. Ventrone, v. Birkel* (1981), 65 Ohio St.2d 10, 19 O.O.3d 191, 417 N.E.2d 1249. The trial court after hearing the evidence presented by the movant in support of contempt found that its order was misunderstood. This, coupled with the general language of the temporary restraining order itself and the surface legitimacy of the board of directors' meeting, led the trial court to conclude that Christ Zavakos was not in contempt of court for holding the December 7, 1989 board of directors' meeting.

An abuse of discretion is an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142; *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264. We do not find that the decision of the trial court to overrule the motion for contempt was an abuse of discretion.

The second assignment of error is overruled.

In accordance with the above rationale, the decision of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF, P.J., BROGAN and GRADY, JJ., concur.