STRAH et al., Appellees,

v.

LAKE COUNTY HUMANE SOCIETY, Appellant.

[Cite as *Strah v. Lake Cty. Humane Soc.* (1993), 90 Ohio App.3d 822.]

Court of Appeals of Ohio,
Lake County.

No. 92–L–179.

Decided Oct. 4, 1993.

**824**

[REDACTED]

*Marvin R. Plasco,* for appellees.

*J. Jeffrey Church,* for appellant.

CHRISTLEY, Judge.

This appeal has been taken from a judgment of the Lake County Court of Common Pleas, granting both a preliminary and permanent injunction in favor of appellees, Catherine Strah, Tammy Stuber, Laura Cochran and Terry Healan. As part of this judgment, the trial court also declared void and set aside the results of an election for the position of director on the Board of Directors for appellant, the Lake County Humane Society, and ordered that a new election be held.

Appellant is a nonprofit corporation, organized under the laws of this state. The rules and regulations governing the structure and functions of this organization are delineated in its bylaws. The operation of the organization is controlled by a Board of Directors. This board consists of five Class I directors and two Class II directors.

Appellant's bylaws provide that Class I directors shall serve terms of three years, and shall be elected by the majority vote of the organization's members. The bylaws further state that the election of Class I directors "shall be held at the annual meeting of the members or at a special meeting called for that purpose." As to the nomination of candidates for the position of director, the

bylaws provide for the formation of a nominating committee each year. The duties of this committee are set forth in Article IV, Section 2:

" * * * It shall be the duty of the nominating committee to present to the secretary at least forty-five (45) days before the next, upcoming annual meeting of members, a slate of persons to be considered for election as directors at the upcoming annual meeting. The slate shall consist of at least as many persons as there will be vacancies on the Board of Directors. The secretary shall be responsible to notify the voting members, not less than thirty (30) days prior to the annual meeting, of the identity of the persons on the aforementioned slate of nominees. Any five (5) voting members in good standing may nominate prospective directors by written petition delivered to the secretary not less than forty-five (45) days before the annual meeting."

As to when meetings should be held, Article I, Section 1 states that the annual meeting of the voting members must be held on the tenth day of June every year. Section 2 of that same Article provides for special meetings of the members at any time upon the call of the organization's president, a majority of the board, or upon the written request of ten percent of the voting members. As to the meetings of the directors only, Article II, Section 5, indicates that this type of meeting is to be held at least once each quarter, and that special meetings of the board can be called by the board's president or three of its members.

As of January 1992, two of the appellees in this appeal, Strah and Stuber, were Class I directors on appellant's board. As of June of that year, the terms of two of the other three Class I directors were concluding. As a result, in February 1992, one of appellant's employees contacted the two other appellees, Cochran and Healan, and asked them if they would be interested in running against the two incumbent directors. Both Cochran and Healan indicated that they would be interested, and soon joined the organization as voting members.

In April 1992, a meeting of the board of directors was held. At that meeting, the sitting directors, including Strah and Stuber, decided that the annual meeting of the voting members would be held on June 25 instead of June 10. At the May 1992 meeting, the date of the annual meeting was moved to July 23. Then, at the next meeting of the board, held on June 1, 1992, the date of the annual meeting was moved to August 13.

As of the June 1 meeting, the nominating committee had not received any petitions from possible candidates for the two Class I director positions. However, at the next meeting of the directors, held on July 8, Strah officially informed the other four directors that she, as secretary of the board, had received petitions from Cochran and Healan. Each of these petitions was dated June 26, and each was signed by the same five members, including Strah and Stuber.

At the July 8 meeting, a majority of the directors voted not to allow Cochran and Healan to run against the two incumbent Class I directors. As grounds for this decision, the majority concluded that Cochran and Healan were not eligible to run in this year's election because their nominating petitions had not been received at least forty-five days prior to June 10. This decision was made in spite of the fact that the petitions had been received forty-five days prior to the actual date of the annual meeting, August 13.

As a result of the majority's action, appellees Strah and Stuber brought the instant action against appellant on July 16, 1992. While this action was pending before the trial court, appellees Cochran and Healan were added as plaintiffs.

In their declaratory judgment complaint, appellees requested the trial court to declare the rights of the various parties under appellant's bylaws. Appellees also asked the court to enjoin appellant from holding its election for the two Class I director positions at its annual meeting on August 13. In addition, in a separate cause of action, appellees requested the court to order an audit of appellant's financial records. In conjunction with their complaint, appellees filed a motion for preliminary injunction as to the scheduled annual meeting.

On July 31, appellant filed a motion to strike appellees' complaint, pursuant to Civ.R. 12(F). In relation to the cause of action concerning the election, appellant argued, *inter alia*, that the trial court did not have the authority to review the board's decision as to the petitions in the absence of an allegation of fraud or collusion. This motion was never ruled upon by the trial court, even though it was filed before a hearing on the preliminary injunction motion was held. Moreover, appellant never filed an answer to appellees' complaint.

On August 5, a hearing was held on appellees' motion. The record before this court does not contain a transcript of this hearing. In the days following this first hearing, the trial court did not enter a judgment concerning the preliminary injunction request. Accordingly, appellant's annual meeting was held on August 13. At that time, the two incumbent Class I directors were reelected without opposition.

A final hearing on appellees' complaint was held on September 2, 1992. Through the testimony presented at this hearing, the following unrefuted facts were established: (1) in the years preceding 1992, the annual meeting of the voting members had never been held on June 10, as required under the bylaws; (2) instead, the meetings had always been postponed by the directors; (3) in the years preceding 1992, the board had typically accepted nominating petitions which were not filed in compliance with the forty-five day requirement, but which were filed before June 10; and (4) in the years preceding 1992, the board had never accepted a nominating petition which was filed after June 10, even if the date of the annual meeting had been postponed.

Approximately one month after the final hearing, the trial court issued its decision in favor of appellees. In relation to the issue of the proper interpretation of the bylaws, the court concluded that the arguments of both sides were inconsistent and illogical. The court then held that the directors had failed to follow the bylaws in postponing the date of the annual meeting. As to this point, the court stated:

"Without getting caught up in the inconsistent arguments of either side, it is sufficient to find the by-laws were not complied with by continuing the annual meeting, and constitutes a significant change of circumstances in the affairs of the organization. By continuing the annual meeting all that followed is a nullity and is void. It is superfluous the [appellees] properly filed within 45 days of any date as the law had not been met in the first instance."

Based upon this logic, the court granted the injunction and ordered that new elections be held. Under the injunction portion of the remedy, the court enjoined the directors from taking their seats and conducting business. In rendering this judgment, the trial court did not rule upon appellees' second cause of action, in which an audit of appellant's financial record had been requested.

Before the final hearing was held, appellant filed a motion for findings of fact and conclusions of law, pursuant to Civ.R. 52. After the trial court had rendered the foregoing judgment, it issued a second entry, finding that appellant's motion had been rendered moot.

In appealing to this court, appellant has assigned the following as error:

"1. The trial court committed reversible error by granting appellees *quo warranto* relief in the form of a preliminary and permanent injunction preventing the directors elected at the August 13, 1992 meeting from taking their seats and conducting the business of the organization.

"2. The trial court erred to the prejudice of appellant in granting injunctive relief to appellees.

"3. The trial court erred to the prejudice of appellants by setting aside the election of directors held on August 13, 1992 and ordering new elections to be scheduled to be held at the November 1992 meeting.

"4. The trial court erred to the prejudice of appellant in failing to rule on appellant's motion to strike on July 31, 1992.

"5. The trial court committed prejudicial error when it failed to issue a 'consolidation' order before the hearing.

"6. The trial court erred to the prejudice of appellant in failing to issue separate findings of fact and conclusions of law upon timely request.

"7. The trial court erred by exhibiting a manifestly unreasonable, arbitrary, and unconscionable attitude toward appellant."

Under its first assignment, appellant challenges the jurisdiction of the trial court to hear this case. Appellant contends that in bringing this action, appellees essentially sought to remove the incumbent Class I directors from their positions. Based upon this allegation, appellant submits that the actual remedy which appellees sought, and which the trial court ultimately gave, was a writ of quo warranto, as compared to an injunction.

R.C. 2733.01(A) provides that an action in quo warranto can be maintained in the name of the state against an individual "who usurps, intrudes into, or unlawfully holds or exercises * * * an office in a corporation created by the authority of this state * * *." In characterizing this type of action, the Ohio Supreme Court has stated that a writ of quo warranto provides a remedy which cannot be obtained in any other type of proceeding: a judgment of ouster. *Ohio Hosp. Assn. v. Community Mut. Ins. Co.* (1987), 31 Ohio St.3d 215, 218, 31 OBR 411, 413, 509 N.E.2d 1263, 1266. Moreover, as appellant aptly notes, it is well settled under Ohio law that a court of common pleas does not have the authority to hear actions in quo warranto; only the Supreme Court and appellate courts can issue such a writ. *State ex rel. Battin v. Bush* (1988), 40 Ohio St.3d 236, 238, 533 N.E.2d 301, 304.

As set forth in their complaint, appellees' first cause of action was clearly one which only sought a declaratory judgment and injunctive relief. Appellees merely sought a declaration of the parties' various rights under the organization's bylaws. Appellees also sought a preliminary injunction to maintain the status quo until the trial court could make the declaration. Appellees did not seek an order removing the incumbent Class I directors from their positions, since these individuals were still serving their old terms when the complaint was filed.

However, once the incumbent directors had been reelected, the nature of the situation was altered considerably, as the new terms were begun. Thus, by declaring the election null and void, the trial court, in effect, removed the two directors from their positions. Even though appellees did not request it, the trial court essentially granted a "judgment of ouster." Under *Battin,* a common pleas court does not have the authority to grant this type of relief. Accordingly, appellant's first assignment of error is well taken.

As was noted above, as part of its judgment, the trial court enjoined appellant's directors from taking their seats and conducting business. Under its second assignment, appellant challenges the propriety of this aspect of the trial court's decision. In support of this assignment, appellant has advanced five separate arguments for consideration.

■ Appellant's first argument is predicated upon the argument which was set forth in the first assignment. Appellant contends that since the two incumbent Class I directors were ousted from their positions, the granting of an injunction was not a proper remedy. Pursuant to the foregoing discussion, this argument is well taken. Again, before the election was held, an injunction stopping the election would have been proper because the two directors had not started their new terms. However, once the election had been held, an injunction could not be employed to stop the directors from taking their seats on the board.

■ In its second argument, appellant submits that the issuance of the injunction was improper because appellees failed to show that a property right would be affected by the outcome of the action. In support of this particular argument, appellant cites *State ex rel. Ohio High School Athletic Assn. v. Stark Cty. Court of Common Pleas* (1962), 173 Ohio St. 239, 19 O.O.2d 52, 181 N.E.2d 261. There, the Supreme Court indicated that as a general proposition, courts of equity will not review the decisions of a voluntary and unincorporated association when there is no property right at stake. *Id.* at 247, 19 O.O.2d at 56, 181 N.E.2d at 266. In relation to this point, appellant also notes that Ohio courts have generally held that a person's entitlement to a public office is not considered a property right. See *State ex rel. Byrd v. Summit Cty. Bd. of Elections* (1981), 65 Ohio St.2d 40, 45, 19 O.O.3d 230, 233, 417 N.E.2d 1375, 1379.

Research on this point has failed to reveal any subsequent cases in which the general statement in *Ohio High School Assn.* has been followed. Historically, the courts of this state have held that injunctive relief can only be invoked to protect property rights. 56 Ohio Jurisprudence 3d (1984) 194–195, Injunctions, Section 69. However, at least one case subsequent to *Ohio High School Assn.* has held that an injunction can be employed to protect personal rights. See *Clark v. Hamilton Local School Dist. Bd. of Edn.* (1977), 51 Ohio Misc. 71, 5 O.O.3d 301, 367 N.E.2d 69.

While the outcome in *Ohio High School Assn.* did not turn upon the issue of whether a property interest was at stake, there has been no subsequent authority overruling this requirement. As will be discussed below, the courts of this state have exhibited a reluctance to interfere in the operations of voluntary associations. The requirement that a property interest be at stake before a court will interfere is consistent with this general reluctance.

■ A review of the trial transcript indicates that no evidence was presented showing that a property right of Cochran and Healan, the two appellees who filed petitions to run against the incumbents, was affected. At best, they merely had a personal interest in the outcome of the matter. Under these circumstances, the trial court did not have the authority to intervene on their behalf through the

issuance of an injunction. Thus, the second argument in this assignment has merit.

In the third aspect of this assignment, appellant submits that appellees failed to show by clear and convincing evidence that they were entitled to an injunction. Under this argument, appellant has raised two points for consideration. First, appellant contends that appellees failed to show that they submitted proper petitions to warrant the placing of Cochran and Healan on the ballot.

As was noted above, appellant's bylaws provide that in order to be valid, a nominating petition has to be signed by five voting members. As part of their case, appellees presented as evidence the two petitions which Cochran and Healan filed with the committee. A review of these petitions indicates that each had five signatures. Included in the names on each petition was the name of the other individual who was filing a petition, *i.e.*, Cochran's petition had Healan's name on it, while Healan's petition had Cochran's.

However, during cross-examination, both Cochran and Healan testified that they could not recall signing the other person's petition, *i.e.*, each could only recall seeing his own petition. In response to this testimony, appellees did not attempt to show that each of the signatures on both petitions were valid. Given this testimony, appellees failed to meet their burden of proof by clear and convincing evidence that Cochran and Healan had filed valid petitions which would warrant the placing of their names on the ballot.

In conjunction with this particular point, appellant submits that the trial court's judgment was inherently inconsistent. As was mentioned above, the trial court concluded as part of its decision that appellees' arguments, as well as appellant's, as to the proper interpretation of the bylaws, were illogical and inconsistent. Notwithstanding this, the court found in favor of appellees because, in the court's opinion, the board had violated the bylaws in continuing the annual meeting.

However, in rendering its decision, the court never made a determination that *appellees* had fully complied with the bylaws in the filing of their petitions. Absent that finding, there was no showing that appellees were entitled to the relief sought. Instead, the court based its decision solely upon the fact that *appellant* had not followed the right procedure. However, in light of the fact that appellees did not demonstrate by clear and convincing evidence that they had complied with the bylaws, the board's error would be harmless, as Cochran and Healan would not be entitled to be placed on the ballot regardless. Accordingly, appellant's third argument under this assignment is well taken.

■ Before an injunction can be issued, the party requesting the relief must show, *inter alia*, that it had no adequate remedy at law. *Zavakos v. Zavakos Ent., Inc.* (1989), 63 Ohio App.3d 100, 103, 577 N.E.2d 1170, 1172. Under the

fourth aspect of this assignment, appellant contends that appellees failed to satisfy this requirement. In support of this argument, appellant again submits that an action in quo warranto was the proper action to obtain the requested relief.

As to this point, this court would simply note that had a preliminary injunction been issued before the election was held on August 13, an action for an injunction would have been proper. Moreover, under those circumstances, appellees would not have had an adequate remedy at law.

In addition to showing that there was no adequate remedy at law, a party requesting an injunction must show that he will suffer irreparable harm if the relief is not granted. *Zavakos* at 103, 577 N.E.2d at 1172. In the final aspect of this assignment, appellant submits that appellees failed to present sufficient evidence to satisfy this requirement. This argument is predicated upon the fact that during their testimony at trial, Cochran and Healan both testified that the only injury they would suffer if the relief were not granted would be a lack of personal satisfaction.

Although not articulated by appellees, the irreparable harm is self-evident from the facts: appellees would not be able to participate in this particular election.

Thus, the final part of this assignment is without merit.

However, as four of the five arguments had merit, appellant's second assignment is well taken. The trial court erred in granting injunctive relief to appellees.

In addition to granting the permanent injunction, the trial court also declared the rights of the parties under the association's bylaws. Based upon its interpretation, the trial court nullified the results of the August 13 election, and ordered that new elections be held. Under its third assignment, appellant challenges the propriety of this aspect of the trial court's judgment.

In support of this assignment, appellant has advanced seven separate arguments for consideration. Under the first argument, appellant contends that the court should not have nullified the elections because appellees failed to show that the board had acted in excess of its corporate power.

As a general proposition, the officers or directors of a nonprofit corporation are given considerable discretion in managing the organization. "Courts will not interfere with the internal management of a corporation not for profit in the absence of proof that the managing officers are acting in excess of their corporate power, or that they are guilty of collusion or fraud." *Cincinnati Camp Meeting Assn. v. Danby* (1943), 74 Ohio App. 116, 121; 29 O.O. 285, 287, 56 N.E.2d 694, 696. This is the same standard which is used to review the decisions of other

types of voluntary associations. See *Lough v. Varsity Bowl, Inc.* (1968), 16 Ohio St.2d 153, 45 O.O.2d 483, 243 N.E.2d 61.

Although it was not expressly stated in the judgment, the trial court clearly concluded that the board had exceeded the scope of its powers under the bylaws. This holding was predicated upon the conclusion that the directors had not followed the correct procedures in continuing the annual meeting. Specifically, the court held that there had been no evidence presented showing that the directors had followed the procedure set forth in Article II, Section 5. This section governs directors' meetings:

"The Board of Directors shall hold a regular meeting at least once each quarter. Special meetings of the Board of Directors may be called by the president and must be called by him/her upon written request of any three (3) directors. * * *"

As was mentioned above, the term "special meeting" is also used in Article I, Section 2, which governs special meetings of the *voting members*. By citing Section 5 of Article II, the trial court apparently concluded that the procedure for calling a special meeting of the directors was applicable to calling special meetings of the *voting members*. However, the language of the bylaws simply does not support this. Section 2 of Article I sets forth a specific procedure for calling a special meeting of the voting members. The procedure for calling special meetings of directors is simply inapplicable.

The court noted that the election of directors could occur at special meetings of the voting members. The court then found that the procedure for calling a special meeting had not been followed. Accordingly, the court interpreted the bylaws to permit the directors to "continue" the annual meeting by simply not holding it on June 10; and then calling a special meeting of the voting members at a later date. In other words, the court held that the annual election of directors could be postponed by simply continuing the annual meeting.

Again, the language of the bylaws simply does not support the court's interpretation. The bylaws do not state that an annual meeting may be postponed, or that a special meeting may be used as a substitute for an annual meeting. Consequently, if the term of a director is about to conclude, the director's reelection to another term, or the election of a new director, can only be done at an annual meeting. An election of a director at a special meeting can only occur if a director resigns in the midst of a term.

In *State ex rel. Carpenter v. Kreutzer* (1919), 100 Ohio St. 246, 126 N.E. 54, the bylaws of the corporation called for an annual meeting on an exact date each year. The bylaws also stated that the election of directors could occur at both the annual meetings and at special meetings. In interpreting these provisions,

the Supreme Court held that the directors of the corporation did not have the authority to postpone annual meetings. *Id.* at 249, 126 N.E. at 55. The logic of this decision is applicable to this case.

Nevertheless, even though we disagree with the logic of the trial court, we find that its ultimate result was correct. Although the bylaws give them no power to do so, appellant's directors did postpone the annual meeting. Thus, they acted in excess of their authority. Appellant's first argument under its third assignment is without merit.

Under its second argument, appellant submits that the trial court erred in nullifying the election results when there was no showing of fraud or collusion. As to this point, this court would simply note that the trial court's decision was not based upon such a finding. Thus, this argument is also without merit.

Next, appellant argues that the judgment as to the validity of the election was incorrect because appellees failed to establish that they had exhausted their remedies under the bylaws before bringing this action. However, a review of the bylaws indicates that it did not provide any procedure for appellees to challenge the board's decision. Thus, this argument is likewise without merit.

Under its fourth argument, appellant asserts that the election should have been upheld because appellees failed to establish that the directors had acted arbitrarily in rejecting the petitions of Cochran and Healan. As to this point, this court would note that the trial court did not expressly find that appellees had followed the right procedure in submitting the petitions. Instead, the court based its decision on the fact that the directors had acted improperly in postponing the annual meeting.

Moreover, the record before this court supports the conclusion that the board did act arbitrarily in rejecting the petitions. Testimony at trial established that in previous years, the board had accepted petitions which had not been filed more than forty-five days before June 10. Yet, the board rejected appellees' petitions, which were filed more than forty-five days before the scheduled meeting of August 13. This evidence could be interpreted as supporting the inference that the rejection of the petitions was arbitrary. Thus, the fourth argument in this assignment is without merit.

In its fifth argument, appellant maintains that the trial court erred in finding that the directors had the authority to postpone the annual meeting. The merits of this point have been addressed under the first argument in this assignment. As noted in that discussion, although this argument is well taken, it cannot form the basis of reversing the trial court's judgment on this point.

As part of its judgment, the trial court stated that by interpreting the bylaws inconsistently, the directors had placed certain persons or groups at a disadvan-

tage. Under its sixth argument, appellant contends that this conclusion was not supported by the facts of the case. However, since the evidence shows that the directors did not consistently enforce the rule concerning the filing of nominating petitions, the evidence supports the trial court's finding that certain individuals had been placed at a disadvantage. Accordingly, this argument is also without merit.

Finally, in the last argument under this assignment, appellant challenges the trial court's decision as to the effect of the improper postponement of the annual meeting. The court declared that as a result of the postponement, all of the directors' subsequent acts were null and void. Appellant argues that the validity of the postponement should not affect the validity of the elections.

In support of this argument, appellant cites the decision in *State ex rel. E. Cleveland Democratic Club, Inc. v. Bibb* (1984), 14 Ohio App.3d 85, 14 OBR 99, 470 N.E.2d 257. In *Bibb*, the annual meeting of a nonprofit corporation was not held in accordance with its constitution. Two special meetings of the members were later held for the purpose of electing officers for the upcoming year. An action in quo warranto was brought to contest the validity of one of the meetings. In relation to the failure to hold the annual meeting at the proper time, the Eighth Appellate District held that this error on the part of the corporation's officers does not affect the validity of the special meeting, if the latter was held properly.

Without commenting upon the merits of this decision, this court would note that it is inapplicable to the facts of this case. Even if the meeting of August 13 can be considered a "special" meeting of the voting members, there is no evidence before us indicating that this meeting was called in accordance with the procedure set forth in Article 1, Section 2, of the bylaws. Thus, the August 13 meeting was not a valid meeting, and the elections held on that date were not valid.

Pursuant to the foregoing discussion, each of the arguments raised in the third assignment are without merit. As a result, the entire assignment is without merit.

 As was noted in the statement of facts, prior to the first hearing in this case, appellant moved the trial court to strike appellees' complaint. This motion was never ruled upon by the court. Under its fourth assignment, appellant contends that the failure of the court to rule on the motion constituted reversible error. In relation to this point, appellant asserts that since a ruling was never made, it was not given the opportunity under Civ.R. 12 to file its answer to appellees' complaint. This argument is based upon the fact that once a pre-answer motion is filed, the time for filing an answer is dependent upon when a judgment on the motion is rendered. See Civ.R. 12(A)(2).

In support of this argument, appellant cites the decision in *Carter v. Johnson* (1978), 55 Ohio App.2d 157, 9 O.O.3d 323, 380 N.E.2d 758. In *Carter*, the defendant filed a motion to dismiss under Civ.R. 12(B)(6) before filing an answer. Prior to issuing its final judgment, the trial court failed to journalize its judgment on the motion. In determining that this constituted reversible error, the Eighth Appellate District emphasized that since the court never made a ruling on the motion, the defendant did not know when to file his answer.

While this court would agree with the holding in *Carter*, our review of the trial transcript indicates that appellant never objected to the procedure followed by the trial court at the second hearing. Appellant never objected to the fact that the court was going to determine the merits of the action before ruling on its motion and before it could file its answer. Moreover, the transcript indicates that appellant's counsel was fully prepared to proceed on the merits at the second hearing, *i.e.*, the record supports the inference that counsel was aware of what was to transpire at that proceeding. There is the possibility, of course, that counsel objected to the proposed procedure at the first hearing; however, a transcript of that hearing is not contained in the record. Without one, we presume regularity.

Although the procedure followed by the trial court was not technically correct, there appears to have been a waiver of this issue. In addition, there has been no showing as to how appellant was prejudiced. Thus, the fourth assignment is not well taken.

The primary issue in appellant's fifth assignment is related to that raised in the fourth assignment. Civ.R. 65(B)(2) provides that in the hearing of a motion for a preliminary injunction, a trial court can order that the trial on the merits of the entire action be advanced and consolidated with the hearing on the motion. Under this assignment, appellant maintains that the trial court erred in failing to properly inform the parties that it intended to consolidate the action. Based upon this, appellant again contends that it was denied the opportunity to fully prepare its case.

Again, while the trial court may not have followed the correct procedure, the record does not support the conclusion that appellant was prejudiced. Further, appellant failed to object and was fully prepared to proceed on the merits when the second hearing was held.

As part of this assignment, appellant again contends that the trial court erred in issuing the injunction after the election had already been held. Pursuant to our discussion under the first assignment, this aspect of the fifth assignment is well taken.

In its sixth assignment, appellant asserts that the trial court erred in not issuing separate findings of fact and conclusions of law. Prior to the final hearing, appellant filed a request for findings of fact and conclusions of law, pursuant to Civ.R. 52. After issuing its final judgment, the trial court entered a second judgment, denying appellant's request on the ground that it was moot. In now arguing that the court erred, appellant submits that its ability to pursue this appeal was prejudiced as a result of the court's actions.

In interpreting Civ.R. 52, the Supreme Court has held that a trial court has a mandatory duty to issue separate findings of fact and conclusions of law, upon a timely request. *In re Adoption of Gibson* (1986), 23 Ohio St.3d 170, 23 OBR 336, 492 N.E.2d 146. However, this court has recognized that in order to comply with this duty, the trial court is not always required to issue a separate judgment. A court can substantially comply with the requirement by filing a "well-written" opinion, if that opinion, along with the remainder of the record, forms an "adequate basis" for determining the issues in the case. *Jones v. Jones* (July 27, 1990), Geauga App. No. 88–G–1497, unreported, 1990 WL 107458.

As to this point, this court would note that the primary issue in this case concerned the proper interpretation of the bylaws. The basic facts of the case were not in dispute. Moreover, in rendering its judgment, the trial court gave a detailed discussion of its interpretation of the bylaws and how they applied to the facts. As a result, we conclude that the trial court substantially complied with its duty under Civ.R. 52. Thus, appellant's sixth assignment is without merit.

In its final assignment, appellant contends that the trial court abused its discretion by exhibiting an arbitrary and unreasonable attitude toward the parties. In support of this argument, appellant cites the issues which were discussed under the fourth and sixth assignment. For the reasons stated in those assignments, we conclude that the trial court's actions did not prejudice appellant in defending this action.

In support of this argument, appellant also notes that after the notice of appeal had been filed in this case, the trial court granted appellees' motion to set an election date. Appellant submits that the trial court did not have jurisdiction to grant the motion. Leaving aside the question of whether this can form the basis of reversing the final judgment in this case, this court would note that until a stay is granted, a trial court retains jurisdiction to enforce its judgment. *State ex rel. Klein v. Chorpening* (1983), 6 Ohio St.3d 3, 6 OBR 2, 450 N.E.2d 1161. The granting of appellees' motion clearly constituted an action in aid of execution.

Finally, appellant submits that the court abused its discretion in ruling upon one of appellees' earlier motions. Before the final hearing was held, appellees moved the court to add Healan as a plaintiff in the action. In granting this

motion, the court added both Healan and Cochran as plaintiffs. In now arguing that this judgment was incorrect and constituted an abuse of discretion, appellant does not attempt to indicate how it was prejudiced by the decision. A review of the record supports the conclusion that it was not.

Although aspects of the trial court's decision were legally incorrect, there is nothing in the record indicating that the court exhibited an unreasonable attitude toward the parties. Thus, appellant's final assignment is not well taken.

The judgment of the trial court is affirmed in part and reversed in part, and judgment is entered ordering that elections be held on June 10, 1994 for the balance of the expired three-year Class I Director's terms at issue, with the incumbents retaining their positions pending the outcome of that election.

*Judgment accordingly.*

FORD, P.J., and NADER, J., concur.