OPINION
{¶ 1} Defendant-appellant, Cambridge Village Condominium Owners Association, Inc. ("the Association") appeals from the July 6, 2004 judgment of the Lake County Court of Common Pleas, denying the Association's motion to confirm election results as of March 23, 2004, and granting plaintiffs-appellees', Marcia Winfield and Thomas Winfield ("the Winfields"), motion to certify votes cast as of June 1, 2004, in which the residents of Cambridge Village rejected an amendment to the Cambridge Village Condominium Declaration of Condominium Ownership ("the declaration"), which would have removed the swimming pool from the description of common area amenities, thus allowing the Association to go ahead with plans to remove the pool. We affirm the decision of the trial court.
 {¶ 2} Cambridge Village is a condominium complex located in Painesville Township, Ohio. As part of the amenities offered to residents, there is a swimming pool, tennis court, basketball court, and a community building located in what is known as the common area within the Cambridge Village complex. The Association is a non-profit corporation, which was formed in 1976 for the purposes of serving as the unit owners' association for administration of the condominium property. From 1976 until 1998, Cambridge Village allowed a neighboring complex, Cambridge Condominiums, to use its common area facilities, via perpetual license. In 1998, however, Cambridge amended its Declaration of Condominium Ownership to delete the perpetual license for use of Cambridge Village's common area facilities, which resulted in Cambridge Village becoming solely responsible for the cost of upkeep related to the common area facilities.
 {¶ 3} In January 2001, as the result of the common area facilities falling into disrepair and the increasing financial burden related to upkeep, the Board of Managers ("the Board") of Cambridge Village proposed a change in the declaration, which would result in the exclusion of the swimming pool from the definition of common area facilities. The purpose of the amendment was so the pool could be demolished and filled.
 {¶ 4} Pursuant to this proposal, the Board prepared an estimate of each unit's financial responsibility for repair and maintenance of the pool, and compared this with the one-time expense of demolition and burying of the pool. The proposed amendment was then circulated among the 108 unit owners, along with a ballot, and the unit owners were asked to vote on the proposal. The amendment contained language which limited challenges to the validity of the amendment to one year following its recording with the Lake County Recorder.
 {¶ 5} In April 2001, the vote total was 82 in favor of the amendment, 10 against, and 16 owners who did not respond. Determining that the results of the vote met the seventy-five percent supermajority as required by R.C. 5311.05(B)(10), the Board caused the amendment to be filed with the Lake County Recorder on April 30, 2001.
 {¶ 6} In the summer of 2001, dissatisfaction grew with the Board, and the Winfields took on a leadership position among the dissidents because of their opposition to the burial of the pool. The Winfields subsequently learned that one of the ballots cast was by a resident who was a grantee on a land contract for the purchase of the unit she lived in. As such, she was not considered an eligible owner for the purposes of casting a ballot, and, therefore, the removal of her vote would result in less than the statutorily required seventy-five per cent needed to pass the amendment.
 {¶ 7} In August 2001, Thomas Winfield ("Mr. Winfield") became a member of Cambridge Village's Board of Managers. In October 2001, Mr. Winfield proposed that the Board vacate the amendment to demolish and bury the pool. However, at the meeting, a competing motion was made to table this vote. Subsequently, a vote was held, which was unanimous, but a dispute erupted as to which one of the two proposals the Board had actually voted upon. During the course of his tenure on the Board, which lasted until August of 2002, Mr. Winfield repeatedly attempted to raise the swimming pool issue before the Board, but he was never able to garner the support of the majority of the Board's members.
 {¶ 8} In April 2003, Marcia Winfield ("Mrs. Winfield") filed suit in the Lake County Court of Common Pleas against Cambridge Village and the Association's board. This case was joined with an action Mrs. Winfield brought against the same parties in Painesville Municipal Court. In her complaint, Mrs. Winfield sought, inter alia, a judgment declaring the April 30, 2001 amendment filed with the Lake County Recorder invalid and an order to compel the Association to make the swimming pool available for its customary usage, and requesting a preliminary injunction against the Board preventing them from taking further action to remove the pool.
 {¶ 9} On November 24, 2003, the court issued a judgment entry, holding that the vote taken in April 2001 did not have the statutorily-required seventy-five percent, since the grantee of the land contract was not eligible to vote on the amendment. The trial court invalidated the Association's one year time limit on challenges to amendment elections, and granted a "preliminary injunction," for 120 days, the purpose of which was for a new election to be conducted to determine if seventy-five percent of the unit owners desired to eliminate the pool from the common area facilities. The stated goal of this injunction was "to allow both sides on this issue to present their case to the unit owners with the hoped for result that informed owners will decide whether or not to assume the necessary financial obligations involved in the repair and maintenance of the pool."
 {¶ 10} On January 2, 2004, the Winfields filed a motion, pursuant to Civ. R. 65, asking the court to grant a temporary restraining order, or, in the alternative, to modify the existing preliminary injunction by an additional 30 days, and also to provide a schedule under which an organized debate would be conducted on or before a certain date, a date when voting would then begin, and a date when the voting would end. The Winfields alleged that the Association did not "intend on maintaining a good-faith debate over the preservation of the pool at Cambridge Village Condominiums." In their motion, the Winfields alleged that rather than conducting any formal meeting or other formal process for airing opposing viewpoints, the Association, over the holiday season, issued a letter and a ballot to all unit owners, requesting that they vote on removal of the pool. The letter allegedly stated that each owner would have to pay an additional charge of $25 per month per unit to maintain the pool if the amendment did not pass and that the association offered no objective basis to support this figure. Although the motion references this letter, it is not in the record. On January 6, 2004, the court denied this motion.
 {¶ 11} On March 18, 2004, the Winfields again moved the court to extend the period of injunctive relief granted on November 24, 2003, for a period of 70 days, until June 1, 2004, alleging that despite due diligence, the Winfields and their counsel had been thusfar unable to procure an opinion on the viability of reopening the swimming pool from the Lake County General Health District ("LCGHD") or the Ohio Department of Health ("ODH"). The LCGHD is responsible for issuing licenses for the operation of public swimming pools, subject to ODH regulations. A letter from the LCGHD was attached to the motion, indicating that Winfield's attorney, a member of the association, a pool inspector, and a representative from the Board of Health, and others met on February 27, 2004 to conduct an examination of the pools, and that the health department had been working with Winfield's attorney since July of 2003 to determine the regulatory status of the pool. At particular issue was a formal response from the Ohio Department of Health ("ODH") to determine what steps would be needed to bring the pool into compliance with current ODH regulations. The letter indicated that the department was "unable to give a definitive answer" whether the pool "would be eligible for licensing this season under the current swimming pool rules." The letter stated that the LCGHD hoped to have the matter resolved no later than May 15, 2004, and strongly recommended that Winfield petition the court for an extension to "allow sufficient time to make the necessary determinations." Winfield, in her motion, stated the extension was necessary, since without the health department's approval for licensing, "any vote regarding the pool is moot until the status and viability of the pool is established," and that the associated costs of reopening and operating the pool "are directly related to the conclusions reached by the * * * governing bodies mentioned above." On March 23, 2004, the Association filed a brief in opposition to the Winfields' motion. In its brief, the Association claimed that over eighty of the eligible voters responded, with the vote tally being approximately eighty-three percent in favor of the amendment and five percent against. On the same date, the Association filed the amendment with the Lake County Recorder's office.
 {¶ 12} On March 23, 2004, the trial court signed an order granting the Winfield's motion to extend the injunction until June 1, 2004. This order was journalized on March 24, 2004.
 {¶ 13} On June 9, 2004, the Winfields filed a motion requesting that the trial court accept the results of the voting process as of June 1, 2004, the results of which were approximately sixty-eight percent in favor of the amendment and thirty-two percent opposed. The motion also requested the court to issue an order compelling the Association to withdraw the amendment as recorded on March 24, 2004, and declare the obligations of the Association with respect to opening and maintaining the pool in light of the results of the vote as of June 1.
 {¶ 14} On June 10, 2004, the Association filed a motion to confirm election results. Submitted with the motion was a tally of the votes and the percentage, along with an affidavit from Thomas Coyle ("Coyle"), President of the Association's Board of Directors. In the affidavit, Coyle stated that the percentage of ownership votes in favor of the amendment was approximately seventy-five percent, with fifteen percent against, the remainder of the voters abstaining. The relevant part of the affidavit states that "[t]his vote represents the same as March 23, 2004, [sic] with the exception that on May 18, 29, and 30, Plaintiffs were able to change a few previous affirmative votes which reduced the consent from 83.3159% to 75.0871%."
 {¶ 15} On June 14, 2004, after receiving a copy of the Association's motion to confirm election results, the Winfields filed a supplement to their notice of election results and motion for declaratory judgment. In their motion, the Winfields specifically brought to the attention of the trial court seven votes which were submitted by the Association for certification, which were collected after June 1, 2004. The Winfields alleged that these votes should not be counted as part of the total, otherwise the "injunctive relief issued by this Court would be nullified and the voting process would be poisoned." Without these seven votes, the result would be sixty-eight percent of the voting owners in favor of the amendment, thus falling short of the seventy-five percent supermajority required by R.C. 5311.05(B)(10).
 {¶ 16} On July 6, 2004, the trial court found in favor of the Winfields, finding specifically that, "[t]he injunction imposed by the Court remained in effect to permit voting from November 24, 2003 until June 1, 2004. * * * Hence this Court can only consider ballots cast during the injunction period." As a result, the court disregarded the seven challenged votes, and found that there was an insufficient number of votes cast to pass the amendment. The court also ordered the Association to withdraw the amendment to the declaration filed with the Lake County Recorder's Office and further ordered the Association to immediately begin the repair and maintenance process of the pool area.
 {¶ 17} The Association timely appealed, raising the following assignments of error:
 {¶ 18} "[1] The trial court erred when it extended the time to vote after the deadline and after the amendment was recorded removing the pool from the common areas absent a finding of collusion or fraud."
 {¶ 19} "[2.] The trial court erred when it accepted the results promulgated by appellees on June 9, 2004.
 {¶ 20} "[3] The trial court erred when it refused to consider the changed votes of several unit owners."
 {¶ 21} In their first assignment of error, the Association argues that the trial court could have confirmed the results of the election as of March 23, 2004, without a finding of collusion or fraud.
 {¶ 22} The second and third assignments of error are essentially identical and will therefore be discussed together. In their second assignment of error, the Association claims that the trial court abused its discretion when it "ignored the voting results of March 23, 2004 and June 10, 2004." In their third assignment of error, the Association argues that the trial court abused its discretion by ignoring the voting results of March 23, 2004, and in not looking at the votes beyond June 1, 2004, despite the fact that "appellant showed irregularity in the election."
 {¶ 23} In essence, all three assignments of error deal with whether the trial court abused its discretion in adopting the June 1, 2004 date as the deadline for balloting on the issue. "The granting of declaratory relief and the issuance of an injunction are matters of judicial discretion and, absent an abuse of discretion by the trial court, an appellate court is not permitted to question the trial court's decision to deny or grant such relief." Control Data Corp. v. Controlling Bd. ofOhio (1983), 16 Ohio App.3d 30, 35 (citations omitted); Perkins v.Quaker City (1956), 165 Ohio St. 120, 125 (unless there is a plain abuse of discretion, reviewing courts will not disturb judgments to grant or refuse injunctions).
 {¶ 24} An abuse of discretion consists of more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Berk v. Matthews (1990), 53 Ohio St.3d 161,169 (citation omitted). Reversal, under an abuse of discretion standard is not warranted merely because appellate judges disagree with the trial judge or believe the trial judge erred. Id. Reversal is appropriate only if the abuse of discretion renders "the result * * * palpably and grossly violative of fact and logic [so] that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." Statev. Jenkins (1984), 15 Ohio St.3d 164, 222 (citation omitted). A reviewing court looks at the totality of the circumstances in determining whether a court acted unreasonably, arbitrarily, or unconscionably. Nelson v. AlphaEnterprises, Inc., 5th Dist. No. 2003CA00166, 2003-Ohio-5422, at ¶ 26.
 {¶ 25} In their first assignment of error, the Association relies onCincinnati Camp Meeting Assn. v. Danby (1943), 74 Ohio App. 116, for the general proposition that "[c]ourts will not interfere with the internal management of a corporation not for profit in the absence of proof that the managing officers are acting in excess of their corporate power, or that they are guilty of collusion or fraud." Id. at 121; see, also, Lough v. Varsity Bowl, Inc. (1968), 16 Ohio St.2d 154. ("As a general rule, courts will not interfere with the quasi-judicial decisions of voluntary associations unless such decisions are alleged and shown to be the result of fraud, arbitrariness, or collusion").
 {¶ 26} The Association argues that since the Winfields did not allege collusion, arbitrariness, fraud, or that the Board exceeded their powers, the trial court "should not deny association members their vote as of March 23, 2004," as this "vote was overwhelmingly in favor of closure." We disagree.
 {¶ 27} In both Danby and Varsity Bowl, the plaintiffs challenged actions of the trustees of private corporations where the rules under which the trustees acted were promulgated pursuant to the corporate charters of the respective organizations. In contrast, the rights and obligations related to the adoption of the proposed amendment are dictated not by the bylaws of the organization, but rather by statute.
 {¶ 28} R.C. 5311.05 (B)(10) provides, in relevant part, that a declaration "requires the affirmative vote of unit owners exercising not less than seventy-five per cent of the voting power." Section 7 of the declaration, providing for amendment of the declaration and bylaws specifically adopts the requirement of R.C. 5311.05(B)(10) in its statement that "[t]his declaration * * * may be amended upon filing for record with the Recorder of Lake county, of an instrument in writing setting forth specifically the item or items to be amended * * * which instrument shall * * * be duly executed by the Family Unit Owners entitled to exercise at least seventy-five per cent (sic) (75%) of the voting power of the association." The section goes on to state that, "no provision in this declaration or bylaws * * * may be changed, modified, or rescinded, which, after such change * * * would conflict with the provisions of Chapter 5311, Ohio Revised Code * * *." Since the bylaws are absent from the record, we can only presume, from the language of this section, that the authority of the board was limited to proposing the "item or items to be amended," while the authority for the adoption or rejection of the amendment was reserved for the unit owners. Since the board did not have ultimate authority to amend the declaration without the support of seventy-five percent of the owners, it is not surprising that the Winfields did not allege that the board acted outside the scope of its authority. The Association's first assignment of error is without merit.
 {¶ 29} In its second and third assignments of error, the Association makes the same argument in two different ways, arguing, in effect, that the trial court erred and abused its discretion by choosing June 1, 2004 as the date for determining the final vote count relative to the amendment. It first argues that the trial court erred by not choosing the vote tally as of March 24, 2004 as the deadline to count the votes. In the alternative, the Association argues that the trial court erred by not counting the seven votes against the amendment which were changed to votes for the amendment subsequent to June 1, 2004.
 {¶ 30} As mentioned earlier, the court has broad discretion in fashioning injunctive relief. Control Data, 16 Oho App.3d at 35. The initial order of November 24, 2003, specifically stated that "the injunction should remain in effect for a period of time in order for a new election to be conducted." The March 24, 2004 judgment entry of the court granted the Winfields' motion to extend injunctive relief, yet was silent as to its reasons for granting the extension. However, as is evident from the sequence of events, the court reasonably found that there was a legitimate relationship between extending injunctive relief to allow for the results of this report, in order for the voters to be fully informed as to whether the pool could be brought into compliance, and, if so, the associated costs in doing so. Since an injunction is a form of equitable relief, "the court has considerable discretion in attempting to fashion a fair and just remedy." Winchell v. Burch (1996),116 Ohio App.3d 555, 561. Thus, there was nothing unreasonable or arbitrary about the court extending the injunction on this basis. Since it is fundamental that "a court speaks through its journal," State exrel. Worcester v. Donnellon (1990), 49 Ohio St.3d 117, 118, we can only conclude that the trial court extended injunctive relief to allow for an informed vote to take place, and for the voting to end on June 1, 2004.
 {¶ 31} Finally, the Association cannot affirmatively demonstrate how the extension of time for voting prejudiced them in any way, as both parties were aware the injunction had been extended, they were both presumably aware of the purpose for the injunction, and both had the same opportunity to inform potential voters on the issues prior to the deadline established by the court. The Association's second and third assignments of error are without merit.
 {¶ 32} For the foregoing reasons, we affirm the judgment of the Lake County Court of Common Pleas.
Ford, P.J., Rice, J., concur.