MAYER, APPELLANT, *v.* THE CINCINNATI ECONOMY DRUG CO., APPELLEE

(No. 7419—Decided May 21, 1951.)

*Messrs. Ginocchio & Ginocchio,* for appellant.
*Messrs. Frost & Jacobs* and *Messrs. Gardner, Freking & Overbeck,* for appellee.

MATTHEWS, J.   This is an appeal on questions of law and fact.   The plaintiff, a shareholder, seeks an injunction commanding the defendant, a corporation, to permit him to inspect its list of shareholders for the years 1947, 1948, 1949, and 1950.

The defendant, by its answer, admits that the plaintiff has been a shareholder of record since January 10, 1948, and that through his counsel, on January 5, 1950, requested permission to inspect the books, list of shareholders and their addresses, or, in the alternative, that defendant furnish the information to him in writing, part of which information was furnished him.   As to the information not furnished which included the list of shareholders and their addresses, the defendant charged that the request therefor was not made for a reasonable or proper purpose, and on that ground the request was refused.

By reply, the plaintiff alleges that he had purchased 50 shares of defendant's stock on December 11, 1946, which were carried in the name of the broker through whom he had bought them, and that these 50 shares, together with 12 shares thereafter acquired, constituted the 62 shares which were transferred to his name on the defendant's books on January 10, 1948.   The plaintiff denies that his request for an inspection of the defendant's books was for an unreasonable or improper purpose.

The evidence developed that there was no substantial conflict as to the facts.

The defendant is a corporation organized under the

laws of Ohio, engaged in the wholesale drug business, and with customers scattered over Ohio and Indiana. It sells "package" articles only. Its name does not appear on the package at any place. Its principal place of business is in the city of Cincinnati, Ohio.

The plaintiff resides in the city of Indianapolis, Indiana. He is and had been for 30 years an officer of the Kiefer-Stewart Company of Indianapolis, which is engaged in the wholesale drug business. It (Kiefer-Stewart Company) also owns 50 per cent of the stock of Walding-Kinnan-Marvin Company of Toledo, Ohio, which company engages in the wholesale drug business. Those two companies and the defendant are competitors in the wholesale drug business, but the evidence is not very clear as to the extent and keenness of the competition.

It appears from the plaintiff's testimony, which is uncontradicted, that he did not know whether, or to what extent, the Kiefer-Stewart Company and the Walding-Kinnan-Marvin Company were in competition with the defendant; that he owned 190 shares of the 3000 shares constituting the issued capital stock of the Kiefer-Stewart Company; and that he had been an inactive and intermittent participant in its business for several years, spending most of his time in Arizona. The evidence leaves the impression that he is a retired business man having only a nominal connection with the business in which he had been active theretofore.

The Kiefer-Stewart Company had a "franchise" from Eli-Lilly Company, and in 1946 the defendant was also granted a similar franchise by Eli-Lilly Company. The defendant tried to show that the granting to it of this right to handle the Eli-Lilly Company products increased the competition between the two companies, and that that fact influenced the plaintiff

to purchase stock in defendant corporation. The plaintiff denied that that fact caused him to buy. He said the listing of the stock on "the Cincinnati Stock Exchange" was what influenced him. On cross-examination, he testified that "there isn't one bit of information that I have requested that would be of any interest to Kiefer's stockholders, directors, or officers," and as to his purpose he said he had no purpose at all in obtaining a list of the shareholders, and that he wanted the list for his "private information," for his "own private information," for his "personal use."

The defendant, through the testimony of its president, emphasized the extent of the competition between it, the Kiefer-Stewart Company, and the Walding-Kinnan-Marvin Company, and endeavored to prove by statements made by officers of the Eli-Lilly Company that when it granted a "franchise" to the defendant a protest was lodged by the Kiefer-Stewart Company, which evidence the court rejected as hearsay. It was stated in argument, without, however, any supporting evidence, that many of defendant's customers were also shareholders, and that knowledge of the shareholders would enable plaintiff to identify the defendant's customers.

There is no claim that the inspection sought by the plaintiff would have interfered in any way with the normal conduct of the defendant's business. Certainly, a shareholder in an Ohio corporation has a prima facie right to seek any information he may desire by such an inspection. Indeed, it would seem that his inspection may be wholly exploratory.

The question presented by this record is whether, under the circumstances disclosed, a court of equity will assist the plaintiff in asserting his right by commanding the defendant to permit such inspection. The

defendant claims that the plaintiff's disclosed purpose is inequitable and that, therefore, an injunction should not be awarded to him.

It would serve no useful purpose to discuss the right to inspection conferred upon a shareholder by the common law. That such a right was conferred is well settled. *Cincinnati Volksblatt Co.* v. *Hoffmeister,* 62 Ohio St., 189, 56 N. E., 1033, 48 L. R. A., 732. Nor need we discuss the circumstances under which a court of equity would, and under what circumstances it would not, lend its remedies to enforce that common-law right. There were circumstances under which a court of equity would withhold its remedies. *American Mortgage Co.* v. *Rosenbaum,* 114 Ohio St., 231, 151 N. E., 122. In Ohio, the right is conferred by statute.

Section 8623-63, General Code, provides:

"The books of account, lists of shareholders, and their addresses, records of the issuance and transfer of shares, voting trust agreements, if any are filed, and the minutes of meetings of every corporation shall be open to the inspection of every shareholder at all reasonable times save and except for unreasonable or improper purposes."

It will be noted at once that, although this section confers or declares the right of inspection, it also places limitations upon and exceptions to the right. The corporate books are open for inspection by shareholders at "all reasonable times save and except for unreasonable or improper purposes." There is no claim here that the time of inspection would be unreasonable, but it is claimed that the purpose is unreasonable and improper.

Now what is an unreasonable or improper purpose?

Section 8623-63, General Code, was under consideration in *William Coale Development Co.* v. *Kennedy,* 121 Ohio St., 582, 170 N. E., 434. In sustaining the

right of inspection, the court referred to the funda-
mental principle that it was the shareholders who, in
the final analysis, owned the property of every kind
that is possessed by a corporation, and then at pages
585 and 586 said: "Can anything be plainer than the
fact that the owner of property has a clear right to
inspect his own property?"

The court then adverted to the fact that the corpora-
tion, its officers, and agents are the agents of the share-
holders, clothed by them with power to manage their
property and then said: "The stockholders elect the
board of directors, and when we seek the source of
any power exercised by the directors, or any other
agent of the corporation, we trace it at once to the
stockholders."

Following this, the court said:

"The stockholder is not obliged to accept as 100 per
cent correct statements prepared by the agents of the
corporation. * * * A refusal of permission to inspect at
reasonable times may itself justly excite a suspicion of
unfaithful or inefficient service on the part of the
agent. * * * When the stockholder is asking the right
to inspect the corporate books, records, papers, and
documents, or the corporate property, such request is
attended by a presumption of good faith and honesty
of purpose until the contrary is made to appear by
evidence produced by the officers or agents who are
seeking to defeat such inspection."

The right of a shareholder to inspect the corporate
books, particularly the list of shareholders, was the
issue in the case of *Bundy* v. *Robbins & Myers*, 50 Ohio
Law Abs., 33, 75 N. E. (2d), 717, decided by the Court
of Appeals of the Second Appellate District, and the
right was sustained, notwithstanding the plaintiff de-
sired the list of shareholders to promote his plan for
refinancing preferred stock of the corporation from

which he might gain some advantage in his business as an investment broker.

Of course, good faith and honesty of purpose must actuate a shareholder in exercising his right to inspect, but a desire to protect and nurture his property and cause it to yield the maximum profit has no taint of bad faith or dishonesty toward anyone. The corporation is organized for profit and that motive is given legal sanction by the law. The sovereign has not hesitated to call it a corporation for profit.

It is true that a shareholder's property is commingled with that of many others, in this case about 1,000, and, of course, his freedom of action is not as great as that of an absolute owner of the undivided title to property. He owes duties to those who have joined with him in dedicating their property to a common enterprise to accomplish a common purpose, to wit, a profit. These duties are not to use his share of the common property in a capricious, irresponsible, or hostile manner, and, tested and weighed against the background of the purpose of the association, such exercise of his ownership of stock could be justly characterized as an unreasonable or improper purpose within the meaning of Section 8623-63, General Code, particularly in a court to which an appeal is made, as in this case, for equitable relief.

Although it is clear that a request for inspection made for an unreasonable or improper purpose may be denied, the presumption is that the demand is made in good faith and for an honest purpose to protect and nurture property, and for no purpose inimical to the common enterprise. As said in *William Coale Development Co.* v. *Kennedy, supra*, at 587, "the burden of proof on this question should not be borne by the stockholder, but should be borne by the agents or officers objecting to the inspection."

The final question then is whether the defendant has sustained the burden of proving that plaintiff's demand for an inspection of the list of shareholders is unreasonable or for an improper purpose.

We have set forth the substance of all the evidence having any tendency to disclose the purpose of the plaintiff in seeking an inspection of the list of shareholders and are of the opinion that the defendant has failed to sustain the burden of proving that his demand was for an unreasonable or improper purpose. The plaintiff testified that the information he sought could have no possible benefit to the Kiefer-Stewart Company, and on this record we fail to find any evidence which would lead the court to the conclusion that a competitor could use any of the information and particularly the list of shareholders so as to interfere with the accomplishment of the purpose for which the defendant was organized. The evidence does not prove that the purpose was to use the information in any manner inimical or detrimental to the accomplishment of the purpose for which the defendant was organized—and that, we believe, is the test by which to determine the reasonableness and propriety of the demand.

For these reasons, the prayer of the petition is granted.

*Judgment for plaintiff.*

HILDEBRANT, P. J., MATTHEWS and Ross, JJ., concur in the syllabus, opinion, and judgment.