AMERICAN HUNGARIAN FEDERATION, APPELLEE, *v.* NADAS ET AL., APPELLANTS.

(No. 51622 — Decided February 23, 1987.)

*Robert Ratimorszky,* for appellee.
*Robert Bruce Henn,* for appellants.

NAHRA, P.J. This case arises out of an internal power struggle in the American Hungarian Federation, appellee (hereinafter the "Federation"), following the elections at the Federation's 1981 biennial National Convention. After several unsuccessful attempts by the displaced officers and their supporting faction (hereinafter the "Nadas faction") to invalidate the 1981 elections, appellant John B. Nadas, on February 19, 1983, on behalf of several members, noticed a special meeting of the Federation for March 26, 1983, for the purposes of, *inter alia,* investigating alleged voting irregularities and fraud in the Federation's 1981 election and 1982 special meeting election and removing officers and directors elected at the Federation's 1981 National Convention. On March 26, the Nadas faction held its meeting and purportedly elected new officers of the Federation to serve until the 1985 National Convention.

On May 2, 1983, the Federation noticed its 1983 National Convention for June 25, 1983, in Akron. At the

June 25 convention, officers and board members were elected to serve two-year terms until the next election at the 1985 convention.

The Nadas faction filed a declaratory judgment action in Summit County following the National Convention seeking a determination of its rights. The Federation brought suit in Cuyahoga County for damages resulting from the Nadas faction's unauthorized use of the Federation's name and for injunctive relief prohibiting the further use of its name. The cases were consolidated to be heard in Cuyahoga County.

Following a hearing, the trial court found that the March 26, 1983 meeting was invalid thereby voiding the March 26 Nadas faction elections. The court thus enjoined appellants from acting as officers of the Federation and further enjoined them from using the Federation's name.

Appellants appealed, but this court dismissed the appeal for lack of a final order since the trial court had not ruled upon the validity of the June 25 National Convention which had been raised in appellants' third-party claim against the Federation's president, secretary and treasurer.

On remand, the Federation withdrew its request for damages and the parties stipulated that the court's ruling as to the validity of the June 1983 meeting should be made based upon the transcript of the previous hearing and exhibits presented at the hearing. After reviewing those materials, the trial court concluded that the June 25, 1983 meeting was valid. The Nadas faction timely appealed.

## I

Appellants' first and second assignments of error, which will be addressed together, are that:

"1. The trial court erred in its ruling that the meeting of the American Hungarian Federation called for March 26, 1983, was not convened in accordance with the by-laws of the association.

"2. The trial court erred in its ruling that the meeting of the American Hungarian Federation called for March 26, 1983, was invalid."

Appellants contend that since they convened and conducted their meeting in accordance with Ohio statutes governing nonprofit corporations, their meeting was properly held and valid.

Pursuant to R.C. 1702.11(A)(1), a nonprofit corporation may provide its own rules or regulations to govern the calling, noticing and conducting of meetings of its members. The by-laws of the Federation, in effect since September 25, 1979, provide for the calling of meetings. Paragraph 21, which governs the calling of a National Convention, provides that:

"The National Assembly (Convention) is the supreme directional and supervisory body of the AHF. Every two (2) years the AHF holds a regular convention, the place and time being established by the National Board of Directors. The purpose of such an assembly is the re-examination of the past years' activities and the ascertainment of directives for the future. The notifications for the assembly are mailed at least thirty (30) days prior to the assembly, by the National Secretary, under the instructions of the Chairman of the Board of the Directors."

Special meetings can be called pursuant to paragraph 25 of the by-laws as follows:

"The AHF National President may call an extraordinary National Convention; the Chairman of the Board of Directors must call such an assembly within ninety (90) days, at the request of one-third (⅓) of the members of the Board of Directors. At

an extraordinary convention, only those topics can be discussed and acted upon which are listed on the invitations and the agenda."

Reading only the by-laws, appellants had no authority to call a special meeting. Only the National President or Chairman of the Board of Directors at the request of one-third of the members of the board can call a special meeting. However, the calling of meetings is also regulated by statute.

R.C. 1702.17(A) permits the calling of meetings of voting members by any of the following:

"(1) The chairman of the board, the president, or, in case of the president's absence, death, or disability, the vice-president authorized to exercise the authority of the president;

"(2) The trustees by action at a meeting, or a majority of the trustees acting without a meeting;

"(3) The lesser of (a) ten percent of the voting members or (b) twenty-five of such members, unless the articles or the regulations specify for such purpose a smaller or larger proportion or number, but not in excess of fifty per cent of such members;

"(4) Such other officers or persons as the articles or the regulations authorize to call such meetings."

R.C. 1702.17(A)(3) allows a nonprofit corporation's regulations to revise the proportions stated in that subsection for the calling of meetings by voting members up to a fifty percent maximum, but the subsection cannot be eliminated in its entirety. This statute, unlike other statutes in R.C. Chapter 1702 which allow the by-laws or regulations to supersede the statutes, e.g., R.C. 1702.18, must be read in conjunction with a nonprofit corporation's regulations. Cf. *State, ex rel. East Cleveland Democratic Club, Inc.,* v. *Bibb* (1984), 14 Ohio App. 3d 85, 14 OBR 99, 470 N.E.2d 257 (R.C.

1702.17 governs when the corporation's regulations are silent). Accordingly, since the Federation has not modified the numbers required for voting members to call a meeting within the stated limitations, ten percent of the voting members of the Federation, in addition to the National President and Chairman of the Board, have the authority to call a meeting.

The next determination, therefore, is whether appellants were voting members of the Federation at the time they called their meeting. Paragraph 13 of the Federation's by-laws provides, in part, that "[m]embers of the AHF are those chapters and member organizations which submit their dues regularly.* * *" Membership ceases, pursuant to paragraph 17 of the by-laws, when a member "neglects to submit its membership dues by the last day of the year, or if, thirty (30) days before the opening of a general assembly in the year of such an assembly, it neglects to submit these dues even after two (2) notifications." In this case, the members calling the meeting had not paid their dues to the Federation, but had instead paid their dues into an escrow account.

Appellants contend that paying dues into an escrow account was sufficient to sustain membership in the Federation. We disagree. The Federation relies on membership fees for its income. Federation's by-laws, paragraph 50. The effect of withholding dues from the Federation by paying them elsewhere cripples the organization itself. Members of an organization implicitly, if not expressly, agree to abide by the organization's rules and regulations. Discontented members should seek redress within the organization's prescribed methods. Thus, the payment of membership fees into a non-Federation account will not sustain an organization's membership in the Federation. Since the organiza-

tions calling the March meeting had not properly paid their membership dues, they lacked the authority to convene a meeting. Consequently, any action taken at the March meeting was null and void. See *State, ex rel. East Cleveland Democratic Club, Inc.,* v. *Bibb, supra.*

Even if the Nadas faction organizations that paid dues to the escrow account were deemed members of the Federation, the March meeting was still not properly convened. Since the by-laws do not provide otherwise, notice of the meeting must be given to each member. R.C. 1702.18. Appellants testified that they tried to obtain the membership records, but the Federation refused to make them available. Again, assuming they were members, appellants' recourse at that point was not to mail notices to only those members of which they were aware, but to enforce their right pursuant to R.C. 1702.15 to examine the membership book. Cf. *State, ex rel. Schafer,* v. *Citizens Natl. Bank* (1959), 168 Ohio St. 535, 7 O.O. 2d 396, 156 N.E. 2d 747 (shareholder in private corporation may compel inspection of books and records by injunction). In this way, all members are protected and assured of receiving notices of meetings, especially a meeting where new officers are to be elected. Since there is evidence that notices were not mailed to all of the Federation's members, but only to fifty-three or sixty-three out of a possible ninety, the trial court's conclusion that the meeting was invalid is supported in the record.

For all of the above reasons, appellants' first and second assignments of error are overruled.

II

Appellants' last assignment of error is that:

"3. The trial court erred in its ruling that the meeting of the American Hungarian Federation held on June 25, 1983, was valid."

Appellants contend that the Federation had no authority to convene the June meeting based on the results of the March meeting. The March meeting, however, was invalid. The June meeting was the biennial convention and was called and noticed pursuant to the Federation's by-laws and governing statutes. In fact, the parties worked together through their attorneys in noticing the June meeting. The by-laws governing special meetings were inapplicable since the June meeting was the regular convention.

Appellants also contend that the proceedings at the June meeting were flawed.[1] No objections, however, were raised at the meeting to the eligibility of any of the voters or to any of the alleged irregularities, even though appellants were adequately represented at the meeting. Regardless, the record supports the trial court's conclusion that the meeting was convened and conducted in accord with the Federation's by-laws and practices and was, therefore, valid. Accordingly, this assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

MARKUS, C.J., and ANN McMANAMON, J., concur.

---

[1] Since the issue was not raised below, we are not addressing whether the June elections should have been contested through an action in *quo warranto*.