CARLSON et al., Appellants,

v.

RABKIN et al., Appellees.*

[Cite as *Carlson v. Rabkin,* 152 Ohio App.3d 672, 2003-Ohio-2071.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020477.

Decided April 25, 2003.

* Reporter's Note: The court removed this case from the accelerated calendar.

674

Damon Law Office and Geoffrey P. Damon, for appellants.

Furnier & Thomas, L.L.P., Scott R. Thomas and Judi L. Sobecki, for appellees Arnold Rabkin, Peggy Coletta, Sylvia Johanning, and Save the Animals Foundation.

William B. Strubbe, for appellee Peggy Coletta.

MARK P. PAINTER, Judge.

{¶ 1} Plaintiffs-appellants, members and former members (we refer to all as "members" except where a distinction is relevant) of Save the Animals Foundation ("STAF"), appeal the trial court's dismissal of their complaint against the defendants-appellees, directors of STAF and STAF itself. We conclude that three of the members' five causes of action were properly dismissed. But we hold that because the members' complaint stated a prima facie case for two of their claims, the members' complaint should not have been dismissed in its entirety. We therefore reverse the trial court's Civ.R. 12(B)(6) dismissal of those two claims and remand the case for further proceedings.

## Bad Blood at the Animal Shelter

{¶ 2} STAF is a nonprofit corporation that operates a no-kill animal shelter for abused and abandoned dogs and cats in Hamilton County. Plaintiffs Ida Katz and Elizabeth Farians are the founders of STAF and are lifetime members. Plaintiff Tad Rathman Carlson is also a member of STAF. The remaining plaintiffs, Douglas Cooper, Gail Cooper, Sue Mueller, and Betty Taylor, are former, but not current, members of STAF.

{¶ 3} Beginning in 1997, Katz made requests to STAF to examine STAF"s books and records. In 2000, Katz and others, through their attorney, sent STAF a letter indicating that they were "concerned about the operation of STAF, and wish[ed] to confirm that it has and continues to operate in a manner consistent with the purpose and stated goals of the organization." They asked to inspect and copy a current membership list, minutes of all meetings of the board of trustees, minutes of meetings of the membership, financial statements and reports, documents filed with the Ohio Secretary of State and the IRS, records regarding property transactions, and records related to the intake and eventual disposition of animals.

{¶ 4} STAF, through its board of directors, denied the members' request, stating that the members did not have a "reasonable and proper purpose" for making such a request. STAF also noted that only two of the six signatories of the letter were members of STAF. In addition, STAF supported its denial by stating that "Katz and other individuals associated with her had engaged in numerous actions that have been disruptive and harassing to the organization."

{¶ 5} The members filed a complaint naming Arnold Rabkin, Peggy Coletta, Sylvia Johanning, and STAF as defendants. The members named each defendant individually and in his or her capacity as a director of STAF. After amending their complaint, the members asserted five causes of action: (1) a claim that the directors had breached their fiduciary duties; (2) a claim seeking to

enforce the members' statutory right to inspect the books and records of STAF; (3) a claim seeking to enforce the members' statutory right to an accounting of STAF transactions; (4) a claim seeking a court order compelling a special membership meeting; and (5) a claim seeking reinstatement and damages for wrongfully excluded members of STAF.

{¶ 6} STAF moved under Civ.R. 12(B)(6) to dismiss the amended complaint for failure to state a claim upon which relief could be granted. The trial court, without any analysis or reasoning in its decision, granted STAF's motion. This appeal followed.

### Derivative vs. Direct Actions

{¶ 7} In reviewing a complaint upon a motion to dismiss under Civ.R. 12(B)(6), a court must presume that all factual allegations are true, and all reasonable inferences must be made in favor of the nonmoving party.[1] In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts that would allow the plaintiff to recover.[2]

{¶ 8} As a preliminary matter, we must determine whether each of the members' claims was asserted as a direct cause of action or as a derivative action. A derivative action requires the plaintiff to comply with the procedural requirements of Civ.R. 23.1, while a direct action does not.

{¶ 9} The Ohio Supreme Court has defined the distinction between the two types of claims: "A shareholder's derivative action is brought by a shareholder in the name of the corporation to enforce a corporate claim. Such a suit is the exception to the usual rule that a corporation's board of directors manages or supervises the management of a corporation. A derivative action allows a shareholder to circumvent a board's refusal to bring a suit on a claim. On the other hand, if the complaining shareholder is injured in a way that is separate and distinct from an injury to the corporation, then the complaining shareholder has a direct action."[3] An injury that is distinct from that suffered by other shareholders could be a wrong involving one of the shareholder's contractual rights as a shareholder.[4]

---

1.  See *State ex rel. Seikbert v. Wilkinson* (1994), 69 Ohio St.3d 489, 490, 633 N.E.2d 1128.

2.  See *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus; *Conley v. Gibson* (1957), 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.

3.  *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 107, 548 N.E.2d 217.

4.  See *Boedeker v. Rogers* (2000), 140 Ohio App.3d 11, 20, 746 N.E.2d 625.

■ {¶ 10} Ohio's nonprofit-corporation law provides members of nonprofit corporations with a derivative cause of action on behalf of the corporation.[5] When members bring a derivative cause of action against a nonprofit corporation, they are enforcing a corporate right just as shareholders may do in for-profit corporations.[6] Because such a suit brought by a member is identical to a shareholder-derivative suit, the procedural requirements of Civ.R. 23.1 for bringing a shareholder-derivative suit must be fulfilled by members of a nonprofit corporation who bring a derivative suit.[7] But when the members of a nonprofit corporation bring a direct cause of action, they need not comply with Civ.R. 23.1.

■ {¶ 11} STAF argues that the members' complaint stated only derivative causes of action, because the wrongs STAF was alleged to have committed were all wrongs against STAF itself. In analyzing whether a complaint states a derivative claim or a direct claim, the court looks at the nature of the alleged wrong rather than the designation used by the plaintiffs.[8] A court must preliminarily determine if the pleadings state an injury to the plaintiff upon an individual claim as distinguished from an injury that indirectly affects shareholders or affects them as a whole.[9]

{¶ 12} The members' complaint alleged that STAF directors had breached their duties of loyalty and care and refused to allow the members to inspect STAF books and records. In addition, the members sought an accounting of STAF books, a special membership meeting, and reinstatement and damages for those wrongfully excluded from membership in STAF.

■ {¶ 13} As a general proposition, claims for breach of fiduciary duties on the part of corporate directors or officers are to be brought in derivative suits.[10] This is because the damage that results from the fraudulent or negligent management of the corporation is primarily damage to the corporation and to the corporate assets, and because it affects the stockholders or members only indirectly and all of them alike.[11] Therefore, such claims must meet the require-

---

5. R.C. 1702.12(I)(1)(c); *Russell v. United Missionary Baptist Church* (1994), 92 Ohio App.3d 736, 738, 637 N.E.2d 82.

6. See *Russell v. United Missionary Baptist Church,* supra, 92 Ohio App.3d at 739, 637 N.E.2d 82.

7. Id.

8. See *Grand Council v. Owens* (1993), 86 Ohio App.3d 215, 220, 620 N.E.2d 234.

9. See *Adair v. Wozniak* (1986), 23 Ohio St.3d 174, 176, 23 OBR 339, 492 N.E.2d 426.

10. See *Grand Council v. Owens,* supra, 86 Ohio App.3d at 220, 620 N.E.2d 234.

11. Id.

ments of Civ.R. 23.1.

{¶ 14} But a member's statutory right to inspect the books and records of a nonprofit corporation, upon written demand stating a reasonable and proper purpose,[12] gives rise to a direct claim, not a derivative one.[13] Likewise, the rights of a member to demand an accounting, to call a special membership meeting, or to be compensated for a wrongful exclusion from the organization implicate individual rights of the member. These are special injuries that are distinct from an injury suffered by all members. Therefore, these are direct claims, and it is not necessary that the members comply with Civ.R. 23.1 before filing their suit.

### Procedural Requirements for a Derivative Suit

{¶ 15} Civ.R. 23.1 establishes the requirements for maintaining a shareholders' derivative action.[14] Specifically, complaining shareholders must (1) spell out, with particularity, the efforts made to have the directors or the other shareholders take the action demanded, (2) explain why they failed in this effort or did not make it, and (3) show that they "fairly and adequately" represent the interests of other shareholders "similarly situated."[15]

{¶ 16} The demand required under Civ.R. 23.1 is a demand that the directors take action, that is, to sue the directors whose wrongdoing is harming the corporation. The demand requirement is essentially a requirement that the shareholder exhaust his or her intracorporate remedies before going to court with a derivative suit.[16] The corporate management must be given the first opportunity to institute the litigation since, as a general principle, the responsibility for determining whether a corporation should use the courts to enforce a cause of action is, like other business questions, ordinarily a matter of internal management left to the discretion of the directors.[17]

{¶ 17} This requirement of making a demand can be excused when the member can demonstrate that the demand would have been futile. "Futility means that the directors' minds are closed to argument and that they cannot properly exercise their business judgment in determining whether the suit should

12. R.C. 1702.15.

13. See Cherpas v. Grimes (Aug. 22, 1984), 9th Dist. No. 11635, 1984 WL 5213.

14. See Weston v. Weston Paper & Mfg. Co. (1996), 74 Ohio St.3d 377, 379, 658 N.E.2d 1058.

15. Id.

16. See Grand Council v. Owens, supra, 86 Ohio App.3d at 221, 620 N.E.2d 234.

17. Id. at 221–222, 620 N.E.2d 234.

be filed."[18]  Courts have consistently rejected the idea that a demand is always futile when the directors are targeted as the wrongdoers in the suit the shareholders or members wish the corporation to bring.[19]  That is, a bare allegation that the directors would not want to sue themselves or each other does not establish that a demand would be futile.[20]

{¶ 18} Examples of when a demand would be excused as futile include when all directors are named as wrongdoers and defendants in a suit, when there is self-dealing by the directors such that the directors gain directly from the challenged transactions, or when there is domination of the nondefendant directors by the defendant directors.[21]  The burden is on the plaintiff to show that the directors cannot exercise independent, unbiased judgment when determining whether to sue themselves.[22]

{¶ 19} STAF argues in this case that the members' complaint did not allege that the members had made a demand to bring suit against the directors for their fiduciary breaches, nor did it spell out what efforts were made to get the directors to take such action.  STAF also argues that the complaint failed to offer any explanation that excused the members' failure to make such a demand.

{¶ 20} Indeed, we note that the members filed their complaint in the trial court with a page missing—the page immediately after the first few lines of the section titled "Allegations in support of demand excused."  The phantom page has never become part of the record in this case—all copies of the complaint we have lack this page.  We cannot consider material that is not part of the record.  And we certainly cannot speculate about allegations made in the missing page.

{¶ 21} From what we have of the complaint, the only statements that supported that a demand would have been futile were that the members were repeatedly rebuffed in their attempts to inspect STAF books and records, to obtain STAF membership lists, or to get an accounting of STAF finances.

{¶ 22} We note that there is nothing in the complaint that stated that the defendant-directors were the only directors.  It is unclear whether there were other directors who, if notified of the defendant-directors' wrongdoing, would have agreed to bring suit.  The complaint also offered no facts to support that

18.  See *Drage v. Procter & Gamble* (1997), 119 Ohio App.3d 19, 25, 694 N.E.2d 479.

19.  Id.

20.  Id.

21.  Id. at 26, 694 N.E.2d 479.

22.  Id.

the alleged breach of fiduciary duties personally benefited the defendant-directors. The burden was on the members to allege the facts in the complaint that, if true, would show that making a demand on the directors would have been futile. We conclude that the complaint failed to state why a demand was excused, and therefore failed to satisfy the requirements of Civ.R. 23.1. In addition, the complaint did not show that the members fairly and adequately represented the interests of other similarly situated members, another requirement of Civ.R. 23.1. As a result, the part of the members' complaint stating a cause of action for breach of fiduciary duties was properly dismissed.

### Inspection of Records and Accounting

{¶ 23} Each nonprofit corporation in the state of Ohio is required to keep correct and complete books and records of account, together with minutes of the proceedings of its incorporators, members, directors, and committees of the directors or members.[23] Subject to limitations prescribed in the articles or the regulations, all books and records of the corporation, including membership records, may be examined by any member for any reasonable and proper purpose and at any reasonable time.[24]

{¶ 24} Regarding what passes as a reasonable and proper purpose, the Ohio Supreme Court has held that "it is not necessary that there should be any particular dispute to entitle a shareholder to exercise the right of inspection. Nothing more is required than that, acting in good faith for the protection of the interests of the corporation and his own interests, he desires to ascertain the condition of the corporation's business."[25] Furthermore, when a written demand is made stating that a specific purpose that on its face is not improper or unreasonable, "the corporation has the burden of proving the contrary in order to excuse its failure to comply with that demand."[26]

{¶ 25} The facts alleged in the members' complaint in this case, which at this point we must accept are true, stated that the members had, on at least two occasions, sent letters to STAF requesting that they be permitted to inspect and copy a current membership list, minutes of all meetings of both the board of trustees and the membership, and all financial statements and reports. The members stated that they were concerned about the operation of STAF and that

---

23. R.C. 1702.15.

24. Id.

25. See *Lake v. Buckeye Steel Castings Co.* (1965), 2 Ohio St.2d 101, 104, 31 O.O.2d 147, 206 N.E.2d 566.

26. Id. at paragraph two of the syllabus.

their purpose for requesting the information was to confirm that STAF was being operated in a manner consistent with the purpose and stated goals of the organization.

{¶ 26} STAF argues that the members did not state a reasonable and proper purpose. Not so. Concern that the organization is operating consistently with its stated goals is a proper reason for a request to inspect corporate records. The burden shifted to STAF to show that the members' demand was improper or unreasonable. STAF had to be able to show that that the members' purpose was inimical or detrimental to the accomplishment of the purpose for which the corporation was organized.[27] And, of course, at this stage of the proceedings, the trial court, and we, must consider the allegations as true.

{¶ 27} In its motion to dismiss, STAF argued that the members stated "absolutely no legitimate, good faith reason." STAF alleged a lack of good faith on the members' part due to the repeated requests made over the course of five years, which STAF labeled as "harassing." But to repeatedly demand what one has a right to ask for does not constitute harassment. It seems to us that STAF offered absolutely no legitimate, good-faith reason why it had not complied with the members' request. We conclude that the members' complaint stated a prima facie case for judicial intervention to enforce their statutory right to inspect the corporate books and records. Therefore, we hold that the trial court erred in dismissing this part of the members' complaint.

{¶ 28} We do note, however, that the right to inspection is a right of *members* of the nonprofit corporation. Therefore, only the plaintiffs in this case who are actually members of STAF, not those who are former members, have a proper cause of action. The claim was properly dismissed as to the nonmember plaintiffs.

{¶ 29} The members also asserted in their complaint that they requested an accounting and were denied. Members of a nonprofit corporation are entitled to seek information concerning the business activities conducted by the corporation. As discussed above, all books and records of account are to be kept by the corporation and may be examined by any member for reasonable and proper purpose.[28] As with their right to inspect the books and records of STAF, the members stated sufficient facts to support a claim for an accounting of STAF transactions. Therefore, the trial court erred in dismissing that part of the current members' complaint that stated a claim for an accounting from STAF.

27. See *Mayer v. Cincinnati Economy Drug Co.* (1951), 89 Ohio App. 512, 519, 46 O.O. 297, 103 N.E.2d 1.

28. R.C. 1702.15.

*Special Membership Meeting*

{¶ 30} The members' complaint also alleged that STAF directors had failed to provide proper notice of meetings and had not held regular meetings and elections in accordance with statutory requirements and the STAF constitution and bylaws. The members sought a court order compelling STAF to immediately issue proper notice and to call a special meeting of membership for the purpose of holding a special election of directors.

{¶ 31} A nonprofit corporation must hold an annual meeting of voting members for the election of directors and for the consideration of reports to be laid before such a meeting.[29] Unless the articles or the regulations provide otherwise, written notice stating the time and place of a meeting of the voting members must be given to each member entitled to notice of the meeting.[30]

{¶ 32} We must assume, at this stage, that the members can prove the factual allegations in their complaint—that STAF held meetings without providing proper notice to each member and that STAF did not follow statutory and STAF requirements for holding meetings and conducting elections. The issue, though, is what relief is appropriate.

{¶ 33} "When the annual meeting is not held or directors are not elected thereat, they may be elected at a special meeting called for that purpose."[31] In *State ex rel. E. Cleveland Democratic Club v. Bibb*,[32] the court held that the failure to hold a meeting on the date specified in the corporation's regulations gave the members the right to compel an annual meeting, but did not invalidate an otherwise properly held meeting after that date.[33]

{¶ 34} The members of a nonprofit corporation may call a meeting of voting members.[34] A meeting of the voting members may be called by the lesser of ten percent of the voting members or twenty-five of such members, unless the articles or regulations specify otherwise, but not in excess of fifty percent of the members.[35] In other words, the members could have called a valid special

---

29. R.C. 1702.16.

30. R.C. 1702.18; see, also, *Am. Hungarian Fedn. v. Nadas* (1987), 35 Ohio App.3d 72, 75, 519 N.E.2d 677.

31. R.C. 1702.16.

32. *State ex rel. E. Cleveland Democratic Club v. Bibb* (1984), 14 Ohio App.3d 85, 14 OBR 99, 470 N.E.2d 257

33. Id. at 88, 14 OBR 99, 470 N.E.2d 257.

34. R.C. 1702.17.

35. Id.

meeting in this case, without any judicial intervention, by having the lesser of twenty-five or ten percent of all members agree to do so. This was the members' proper course of action when meetings had not been held in accordance with statutory and corporate requirements. If the members could not garner sufficient support from other members to call such a meeting, it was not for the court to intervene. To do so would have permitted the members to circumvent the minimum statutory requirements[36] and allowed only three members to force a special meeting and a special election.

{¶ 35} The members did have a legal remedy to challenge the directors' right to be in office—an action in quo warranto. A writ of quo warranto is the proper and exclusive remedy for determining the legal right of an officer of an incorporated nonprofit association to hold office.[37]

{¶ 36} In *State ex rel. Anti–Vivisection Society v. Brandt*,[38] the court issued a writ of quo warranto when all members did not receive notice of a meeting. The court held that the meeting was illegally convened and that the action taken at it was of no legal effect, and it ousted the directors and officers elected at the meeting.[39] In *Strah v. Lake County Humane Society*,[40] the court held that an action in quo warranto was the only remedy to obtain a judgment of ouster.[41] The court held that a court of common pleas lacked authority to grant quo warranto relief by issuing an injunction to oust directors of a nonprofit corporation on the basis that they had been elected at an unlawfully postponed annual meeting.[42]

{¶ 37} For a private relator to maintain an action in quo warranto to obtain an office in a corporation created by authority of the state, the relator must prove that he or she is personally entitled to the office.[43] Therefore, in this

36. R.C. 1702.17.

37. See *State ex rel. E. Cleveland Democratic Club, Inc. v. Bibb*, supra, 14 Ohio App.3d at 87, 14 OBR 99, 470 N.E.2d 257; *Peace–U.S.A. v. Abbott* (Nov. 10, 1988), 10th Dist. No. 88AP–487, 1988 WL 121281.

38. (1962), 91 Ohio Law Abs. 103, 185 N.E.2d 790.

39. Id.

40. (1993), 90 Ohio App.3d 822, 631 N.E.2d 165.

41. Id. at 828, 631 N.E.2d 165; see, also, *Ohio Hosp. Assn. v. Community Mut. Ins. Co.* (1987), 31 Ohio St.3d 215, 218, 31 OBR 411, 509 N.E.2d 1263.

42. *Strah v. Lake Cty. Humane Soc.*, supra, 90 Ohio App.3d at 828, 631 N.E.2d 165.

43. See *Parma v. Cleveland* (1984), 9 Ohio St.3d 109, 112, 9 OBR 336, 459 N.E.2d 528.

case, a writ of quo warranto is likely premature for the members at this time. Even if everything alleged by the members is true, their proper remedy was to gather support against the current directors and to call a special meeting, where new directors could be elected. If the current directors resisted, an action in quo warranto would have then been in order. But, at this time, this part of the members' complaint failed to state a claim upon which relief could be granted. Therefore, that part of the members' complaint stating a claim for violations of meeting and election rules was properly dismissed.

### Exclusion of Members

{¶ 38} In their final cause of action, the members alleged that they had been wrongfully excluded from membership without due process. The parties agree on the status of the plaintiffs in this case. Plaintiffs Katz, Farians, and Carlson are current members of STAF. Plaintiffs Cooper, Cooper, Mueller, and Taylor are former members, but not current members.

{¶ 39} Clearly, the plaintiffs who are current members could not have stated a valid claim for exclusion of membership. In their complaint, the members argued that they had been excluded from membership because they had been denied certain individual membership rights, such as the right of inspection or the right to attend and vote at corporate meetings. These claims are best addressed with the members' other causes of action stated in their complaint. Under these circumstances, the trial court properly dismissed the members' claim for exclusion of membership.

{¶ 40} For the former members, the burden was on them to allege facts in their complaint to show that their memberships were wrongfully terminated. A nonprofit corporation has the power to expel members and may make provisions in its articles or regulations with respect to the censure and suspension of members and the termination of membership.[44]

{¶ 41} Rather than stating any facts, the complaint stated only conclusions that the former members were wrongfully excluded and denied continued membership. The only facts offered in support of the allegedly wrongful termination of membership were allegations that, apparently when they were members, they were denied access to STAF facilities and records. But, as with the current members, such action by STAF is better addressed by a cause of action for denial of the statutory right of inspection, rather than for exclusion of membership. Because there were no factual allegations in the complaint to show that their memberships were wrongfully terminated, this part of the complaint failed to state a claim upon which relief could be granted and was properly dismissed.

---

44. R.C. 1702.11(A)(2); R.C. 1702.13(C).

### Conclusion

{¶ 42} The plaintiffs who are current members of STAF have successfully stated claims against the defendants in their capacities as directors to inspect STAF books and records and to receive an accounting of STAF transactions. Therefore, the trial court erred in dismissing the complaint in its entirety. But all other claims fail. The trial court properly dismissed all claims brought by plaintiffs who are not current members of STAF. The trial court also properly dismissed the claims brought by all plaintiffs for breach of fiduciary duties, to compel a special membership meeting, and for wrongful exclusion of members. This case is remanded to the trial court for further proceedings in accordance with the terms of this decision.

Judgment affirmed in part,
reversed in part
and cause remanded.

DOAN, P.J., and WINKLER, J., concur.