OPINION
{¶ 1} Defendant-appellants Apple Valley Property Owners Association and Jeff Harmer appeal from the December 4, 2006 Opinion and Final Judgment of the Knox County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Apple Valley Property Owners Association (AVPOA) is a nonprofit Ohio corporation that was created in 1972 and has approximately 5,600 members who own property in Apple Valley, a residential community located in Knox County, Ohio. Appellant AVPOA employs a full-time staff, including a general manager, Jeff Harmer, as well as seasonal employees. As a non-profit corporation, appellant AVPOA is subject to Chapter 1702 of the Ohio Revised Code.
 {¶ 3} Appellant AVPOA is governed by a Board of Directors (hereinafter "Board") comprised of nine non-paid members who carry on the affairs of the Association. Each member serves a three year term but the terms are staggered. The AVPOA board holds monthly open meetings that are open to all members of Apple Valley and also holds a monthly work session that is not open. The Board's powers are set forth in Article 9 of appellant AVPOA's bylaws. Article 9 of the bylaws states, in relevant part, as follows:
 {¶ 4} "9.5 Removal of Directors. A director may be removed by a vote of three-fourths of the Board of Directors present at a Board meeting in which a quorum is present for `just cause'. `Just cause' shall include self-dealing, conflict of interest, or negligence in performing the responsibilities of a director. If a motion to remove a Director is made at a Board meeting, the motion shall not be acted upon until the next Board meeting. Notice of the motion shall be mailed to the Director, whose removal is *Page 3 
sought, not less than twenty-one days prior to the meeting when the motion is to be considered."
 {¶ 5} Upon becoming a Board member, each Board member signs and agrees to abide by an Oath of Office that provides as follows:
 {¶ 6} "I, [name of person], do solemnly promise, in the presence of Almighty God and Members of The Apple Valley Property Owners Association that I will, to the best of my abilities, faithfully and impartially perform all of the duties incumbent to my office. Keeping in mind that I am representing the entire membership; and that all decisions or actions will not be for personal gain but for the betterment of The Apple Valley community. I will conform to the Bylaws, Rules, Regulations and Restrictive Covenants of The Apple Valley Property Owners Association. Also, I will abide by the Code of Conduct of this Association, and Laws of the State of Ohio and United States of America."
 {¶ 7} In addition, each member also signs and agrees to abide by a Code of Conduct that provides, in part, as follows:
 {¶ 8} "Board meetings will be conducted in a professional and business-like manner. Personal attacks against property owners, Board members management, or guests are not consistent with the best interest of the community and will not be tolerated. . . .
 {¶ 9} "Members of the Board shall not use their position on the Board for personal gain. No Board member shall willingly misrepresent facts for the sole purpose of advancing a personal cause or influencing the community to advance a personal cause. *Page 4 
 {¶ 10} "Board members shall not engage in defamation, by any means, of any member of the Board, any staff member or any resident of the community."
 {¶ 11} In June of 2005, appellee Kathryn Elliott Pullins (hereinafter "appellee") was elected a board member of appellant AVPOA.
 {¶ 12} In August of 2005, appellee's father, Stephen Elliott, filed a lawsuit against appellant AVPOA. Elliott, who also owns a residence in Apple Valley and is a member of appellant AVPOA, filed a complaint for a temporary restraining order and preliminary and permanent injunctions against appellant AVPOA seeking to stop construction of a "fence like" structure in which to attach electrical equipment to service a park's shelter house and pond on appellant AVPOA property. The lawsuit was filed by Scott Pullins, appellee's husband. At the time, appellee worked for her husband's law firm.
 {¶ 13} Elliott, in his lawsuit, sought to stop construction of the structure on the chosen location. While the lawsuit was pending, appellee refused to remove herself from Board discussions concerning the same and, when asked by Carl Holmes, the APVOA Board President, during a September 1, 2005, APVOA Executive Session Meeting to recuse herself so that the remainder of the Board could discuss the pending litigation, refused to do so. Instead, appellee distributed an August 31, 2005, legal memorandum, which was prepared by her husband, that concluded that appellee had no conflict of interest and did not have to recuse herself from Board discussions concerning her father's lawsuit. The memorandum stated, in part, as follows:
 {¶ 14} "In the case of Stephen Elliott v. The Apple Valley PropertyOwners Association, Inc., neither you [appellee], your immediate family members, or any entity in which they have a significant interest, have a personal financial interest in the *Page 5 
outcome. The lawsuit is of an equitable nature and simply asks for a preliminary and permanent injunction to prevent the association from constructing a structure that will block the plaintiffs view, ingress, and enjoyment of his property. No money damages are asked for or are possible."
 {¶ 15} Because appellee Kathryn Elliott Pullins refused to recuse herself, the meeting was adjourned.
 {¶ 16} Thereafter, an open board meeting was held on January 10, 2006 at which there was a physical altercation between Scott Pullins, appellee's husband, and Carl Holmes, the Board President. As a result, Scott Pullins, on behalf of himself, his wife, his in-laws and his daughter, filed a petition for a civil stalking protection order against Carl Holmes seeking, in part, an order preventing Holmes from attending any meetings of the Apple Valley Board of Directors or committees that any of them might attend.
 {¶ 17} While serving on the AVPOA Board, appellee was also a member of Reform Apple Valley (RAV), a non-profit unincorporated association that was created in 2006. RAV has a website that is managed by the Pullins Group, LLC. Appellee is the managing director of the Pullins Group, which shares offices with her husband's law firm. On March 4, 2006, the RAV website posted a statement that provided, in relevant part, that "We [appellee and her husband] believe that the current leadership and management of the Apple Valley Property Owners Association, Inc. is corrupt and dishonest" and that "[o] ur multi-million dollar investments are overseen by a shadowy committee with little or no oversight." While Scott Pullins authorized the statements, appellee reviewed the same. *Page 6 
 {¶ 18} On or about February 25, 2006, Scott Pullins, on behalf of himself and his father-in-law, sent a letter to the Apple Valley Board of Directors. The letter stated, in relevant part, as follows:
 {¶ 19} "I am writing on behalf of my client, Stephen Elliott and myself. The March 2006 issue of the Cider Press that I received today utilized approximately three full pages to reproduce a portion of a lawsuit that I filed over six months ago against the Apple Valley Property Owners Association Inc. on behalf of Mr. Elliott.
 {¶ 20} "The article and its reproductions were written in a manner that falsely and maliciously implies that Mr. Elliott's suit was dismissed as a result of the answer filed by your attorney, Thomas Garrett Ressing. That implication is absolutely false and defamatory in nature." Pullins, in his letter, noted that the lawsuit that Stephen Elliott had filed in August of 2005 was settled in Elliott's favor.
 {¶ 21} Scott Pullins, in the letter, threatened legal action against the Board and the individual directors unless, among other matters, the Board instituted certain specified polices and immediately terminated both Jeff Harmer, AVPOA's general manager, and AVPOA's legal counsel.
 {¶ 22} At an Executive Session on March 9, 2006, the AVPOA Board discussed whether or not, based on concerns about her conduct, appellee, who was not present at the time, should be removed as a board member. No formal action was taken at such time and the matter was tabled until the Executive Session on March 14, 2006. At the March 14, 2006, open meeting of the Board, a motion was made to send appellee a letter pursuant to Article 9.5 of the bylaws indicating that her removal as a board member was being considered. The Board unanimously agreed to send appellee a *Page 7 
letter indicating that it was considering removing her and that she was entitled to submit information on her behalf before a vote was taken on April 6, 2006.
 {¶ 23} The March 15, 2006, letter that was mailed to appellee stated as follows:
 {¶ 24} "The purpose of this letter is to inform you that the AVPOA board voted unanimously on March 14, 2006, to remove you as a director for `just cause' pursuant to Section 9.5 of the AVPOA Bylaws. You have not less than 21 days to submit any information on your behalf relevant to this issue before it is voted on at the next board meeting, which is currently anticipated to be scheduled for April 6, 2006, at 6:30 p.m. In the alternative, if you would prefer to voluntarily resign instead, the Board of Directors will accept that resignation and take no further action on the removal."
 {¶ 25} The letter was signed by appellant Jeff Harmer as Corporate Secretary.
 {¶ 26} Thereafter, on April 3, 2006, appellee, Stephen Elliott, who is her father, and RAV filed a complaint for temporary and permanent injunctions and declaratory judgment against appellant AVPOA, Jeff Harmer, appellant AVPOA's general manager, and appellant AVPOA's Board of Directors. The complaint alleged, in part, that appellant AVPOA's Board of Directors had violated Ohio law and bylaws in removing her as a board member and requested that she be reinstated to appellant AVPOA's Board of Directors. The complaint also requested that appellee be granted access to financial documents maintained by appellant AVPOA.
 {¶ 27} A board meeting was held on April 6, 2006. Appellee and her husband appeared at the location of the meeting with two armed security guards but left after they were not permitted to enter the meeting with the armed guards. After they left, the *Page 8 
Board voted unanimously to remove appellee from the Board of Directors for "just cause."
 {¶ 28} Appellee, Stephen Elliott, her father, and RAV then filed an amended complaint for temporary and permanent injunctions and declaratory judgment on June 27, 2006. The first amended complaint added constitutional law claims.
 {¶ 29} Subsequently, on August 11, 2006, appellant filed a Motion for Summary Judgment. On September 5, 2006, the trial court held a hearing on the motion for a preliminary injunction filed by appellee, Stephen Elliott and RAV relating to appellee's removal from appellant AVPOA's Board of Directors. Pursuant to an order filed on September 11, 2006, the trial court denied the motion and stated that it was reserving "any final decision on the merits of that claim for consideration at the trial of this case . . ."
 {¶ 30} On September 21, 2006, appellee, Stephen Elliott and RAV filed a second amended complaint for permanent injunction and declaratory relief. The second amended complaint omitted most of the constitutional law claims that had been contained in the first amended complaint.
 {¶ 31} Pursuant to an Opinion and Order filed on October 17, 2006, the trial court granted appellant's Motion for Summary Judgment in part and denied the same in part. The trial court specifically denied summary judgment on appellee's claims that she had been unlawfully removed from appellant AVPOA's Board of Directors and on her claim that she was improperly denied access to appellant's AVPOA financial records.
 {¶ 32} A bench trial on the above two claims commenced on November 20, 2006. As memorialized in an Opinion and Final Judgment filed on December 4, 2006, the trial court held that appellee's removal from the Board of Directors was invalid and *Page 9 
ordered that she be reinstated by December 31, 2006. The trial court also found that appellee was entitled to have access to appellant AVPOA's financial records and ordered that the same be provided to her by December 31, 2006.[1]
 {¶ 33} Appellants now raise the following assignments of error on appeal:
 {¶ 34} "I. THE TRIAL COURT ERRED IN ORDERING THE REINSTATEMENT OF MRS. PULLINS TO THE APPLE VALLEY PROPERTY OWNER'S ASSOCIATION BOARD OF DIRECTORS WHERE THE BOARD FULLY COMPLIED WITH THE REMOVAL PROCESS OUTLINED IN OHIO LAW AND THE AVPOA BYLAWS.
 {¶ 35} "II. THE TRIAL COURT ERRED IN ORDERING APPLE VALLEY PROPERTY OWNER'S ASSOCIATION TO GIVE MRS. PULLINS ACCESS TO INDIVIDUAL EMPLOYEE SALARY INFORMATION GIVEN THAT THE APPLE VALLEY PROPERTY OWNER'S ASSOCIATION BYLAWS DO NOT PERMIT SUCH A RIGHT AND ALLOWING ACCESS TO SUCH INFORMATION RAISED PRIVACY AND CONFIDENTIALITY CONCERNS."
 I {¶ 36} Appellants, in their first assignment of error, argue that the trial court erred in ordering appellee's reinstatement to appellant AVPOA's Board of Directors because the Board fully complied with the removal process outlined in Ohio law and appellant AVPOA's bylaws. We disagree.
 {¶ 37} "`It is well established [as set forth in 4 American Jurisprudence 466, section 17] that courts will not interfere with the internal affairs of voluntary associations, except in such cases as fraud or lack of jurisdiction. Accordingly, it is held that *Page 10 
mandamus will not lie to regulate the affairs of unincorporated societies or associations, at least not in the absence of a permissive statute. Nor will an injunction be granted where the association is proceeding in accordance with its rules and within the scope of its jurisdiction. The decisions of the tribunals of an association with respect to its internal affairs will, in the absence of mistake, fraud, collusion, or arbitrariess [sic], be accepted by the courts as conclusive. Moreover, it is held that the courts will not undertake to inquire into the regularity of the procedure adopted and pursued by such tribunals in reaching their conclusions.'
 {¶ 38} "Even more to the point is the following language at page 472, Section 27, ibid: The decisions of any kind of voluntary society orassociation in disciplining suspending, or expelling members are of aquasi judicial character. In such cases the courts never interfereexcept to ascertain whether or not the proceeding was pursuant to therules and laws of the society, whether or not the proceeding was in goodfaith, and whether or not there was anything in the proceeding inviolation of the laws of the land. * * *'" State, ex rel. OHSAA, v.Judges (1962), 173 Ohio St. 239, 247, 181 N.E.2d 261. (Emphasis added).
 {¶ 39} As is stated above, appellant AVPOA is a non-profit corporation and thus is governed by R.C. Chapter 1702, which concerns non-profit corporations. R.C. 1702.29 states, in relevant part, as follows: "(B) A director may be removed from office pursuant to any procedure therefore provided in the articles or in the regulations and such removal shall create a vacancy in the board."
 {¶ 40} Article 9.5 of appellant AVPOA's bylaws permits removal of a director for "just cause." Article 9.5 goes on to then define "just cause" as follows: "`Just cause' shall *Page 11 
include self-dealing, conflict of interest, or negligence in performing the responsibilities of a director."
 {¶ 41} In turn, Article 9.10, captioned "Conflict of Interest", states as follows:
 {¶ 42} "9.10 Conflict of Interest. All Directors shall endeavor to conduct themselves on Association business according to the highest ethical standards and shall strive to avoid even the slightest appearance of impropriety. In that regard, Directors shall not, either directly or indirectly, derive a personal profit or advantage from their positions as Directors, in that the prime obligation of the Director is to the Association and its Members and not to himself or herself. No contract or business relationship shall be entered into between the Association and a Director or any entity in which her or his family have significant interest, unless the material facts of the relationship and transaction are disclosed or are made known to the Board and a majority of the disinterested Directors specifically authorize the contract or business relationship. Directors shall generally abstain from discussing at a meeting, or voting upon, any matter in which they, their immediate family members or any entity in which they have significant interest, have a personal financial interest in that outcome. No Director shall solicit personal favors or exert (direct or implied) influence on the General Manager or Association employee in order to gain business or personal favors for himself."
 {¶ 43} At issue in the case sub judice is whether appellee was removed for "just cause." Appellants specifically contend that appellee was removed "for cause" because her refusal to recuse herself from discussions about her father's lawsuit created a conflict of interest as such term is defined in Article 9.10. *Page 12 
 {¶ 44} As is stated above, appellee's husband, Scott Pullins, on August 23, 2005, filed a lawsuit on behalf of Stephen Elliott, appellee's father. Stephen Elliott, in his lawsuit against appellant AVPOA, sought to require such appellant to relocate a utility structure near his property for aesthetic reasons. Elliott, in the lawsuit, requested a temporary restraining order as well as preliminary and permanent injunctions. He did not request monetary damages. Appellants also maintain that appellee's conduct during the January 10, 2006, Board meeting and the ensuing litigation filed on her behalf against appellant AVPOA's Board President and her involvement in the posting of "false and disparaging statements" on the RAV website constituted "just cause" for her removal.
 {¶ 45} As is stated above, Section 9.5 of the bylaws defines the term "just cause" as including conflict of interest. In its December 4, 2006, Opinion and final Judgment, the trial court, in the case sub judice, held, in relevant part, as follows:
 {¶ 46} "Section 9.10 defines the term `conflict of interest.' It begins with precatory language that directors should `endeavor to conduct themselves on Association business according to the highest ethical standards and shall strive to avoid even the slightest appearance of impropriety.' It then confines a `conflict of interest' to situations in which directors —
 {¶ 47} "(a) derive `a personal profit or advantage' from their position as directors;
 {¶ 48} "(b) cause or permit the Association to enter into a `contract or business relationship' with that director or `any entity in which the director's family has a significant interest,' without disclosing that situation to the board, or *Page 13 
 {¶ 49} "(c) discuss at a board meeting or vote on `any matter in which they, their immediate family member or any entity in which they have a significant interest, have a personal financial interest in that outcome.'" (underlining emphasis added)
 {¶ 50} "This Court construes the bylaws to preclude removal for a `conflict of interest' by any other definition." The trial court then concluded that appellee was not removed for a "conflict of interest" under the bylaws.
 {¶ 51} As is stated above, Article 9.10 of the bylaws states, in part, that "[directors shall generally abstain from discussing at a meeting, or voting upon, any matter in which they, their immediate family members or any entity in which they have a significant interest, have apersonal financial interest in that outcome." (Emphasis added). As noted by the trial court in its decision, because the complaint filed by Stephen Elliott does not seek monetary damages, "[a] t most, Attorney Scott Pullins might recover compensation for his professional services in that lawsuit." For the foregoing reasons, we concur with the trial court that it was not a conflict of interest for appellee to refuse to recuse herself from Board discussions about the lawsuit filed by her father. Neither appellee nor her immediate family members or any entity in which they have a significant interest, had a personal financial
interest in the outcome of the lawsuit.
 {¶ 52} Appellants contend that the trial court erred "when it dismissed as mere `precatory language' the language in Article 9.10 that `[a] ll Directors shall endeavor to conduct themselves on Association business according to the highest ethical standards and shall strive to avoid even the slightest appearance of impropriety.'" Appellants argue that, under the above language, one could be removed for failing to engage in the *Page 14 
highest ethical standards or for failing to avoid the slightest appearance of impropriety. We disagree.
 {¶ 53} We concur with the trial court's well-reasoned decision. One could conduct oneself with less than the "highest ethical standards" without necessarily engaging in a conflict of interest as defined by Article 9.10. Moreover, there is nothing in the bylaws authorizing removal of a director for engaging in unethical behavior that creates an appearance of impropriety. In order to be removed as a Director, one of the above limited situations described by the trial court must be present. While appellants argue that such an interpretation prohibits the Board from removing Directors who have been convicted of, for example, child pornography, rape, murder or tax evasion, we note that, while reprehensible, such a conviction does not constitute a conflict of interest as such term is defined in the bylaws.
 {¶ 54} Appellants further assert that they were justified in removing appellee based upon the disparaging statements posted on the RAV website, and the civil protection order that appellee had filed on her behalf against Carl Holmes, the Board President. However, what appellant refers to as appellee's "constant disruptive and hostile conduct" is not grounds for removal under appellant's bylaws. As noted by the trial court, "[n] either the covenants nor the Bylaws permit a director's removal simply because other directors believe in good faith that the removal is in the best interests of the association."
 {¶ 55} Appellants' first assignment of error is, therefore, overruled.
 II *Page 15 {¶ 56} Appellants, in their second assignment of error, argue that the trial court erred in ordering appellant AVPOA to give appellee access to individual employee salary information. We disagree.
 {¶ 57} In the case sub judice, after appellee requested such information, Jeff Harmer, pursuant to a letter to appellee dated September 13, 2005, declined to provide such information to her. Harmer, in his letter to appellee, stated, in relevant part, as follows: "It was determined by a previous Board that personal employee information, including salaries, be vested with the Manager and not disclosed to the Board or other property owners."
 {¶ 58} Pursuant to R.C. 1702.15, each nonprofit corporation in the state of Ohio is required to keep correct and complete books and records of account, together with minutes of the proceedings of its incorporators, members, directors, and committees of the directors or members. Subject to limitations prescribed in the articles or the regulations, all books and records of the corporation, including membership records, may be examined by any member for any reasonable and proper purpose and at any reasonable time.
 {¶ 59} The Ohio Supreme Court has held that "it is not necessary that there should be any particular dispute to entitle a shareholder to exercise the right of inspection. Nothing more is required than that, acting in good faith for the protection of the interests of the corporation and his own interests, he desires to ascertain the condition of the corporation's business." See Lake v. Buckeye Steel CastingsCo. (1965), 2 Ohio St.2d 101, 104, 206 N.E.2d 566. Furthermore, when a written demand is made stating that a specific purpose that on its face is not improper or unreasonable, *Page 16 
"the corporation has the burden of proving the contrary in order to excuse its failure to comply with that demand." Id at paragraph two of the syllabus. See also Carlson v. Rabkin, 152 Ohio App.3d 672,2003-Ohio-2071, 789 N.E.2d 1122.
 {¶ 60} We note that, in the case sub judice, appellant AVPOA's bylaws state, in Article 12.6, as follows with respect to inspection of its records:
 {¶ 61} "Inspection of Records. The membership register or duplicate membership register, the books of accounts, and minutes of the proceedings of the Members' meeting and the Board meeting and the written notes and records of committees, if any, shall be open toinspection upon the written demand of any Voting Member at anyreasonable time for a purpose reasonably related to his or her interestas a Member. None of the above will be available to non-members of the Association without Voting Member written approval or Board action. Voting Members may request and receive copies of any of these items in accordance with procedures and costs established by the Board. These records available for inspection shall not include documents relating to legal or personnel issues, or executive minutes of the Board." (underlining emphasis added)
 {¶ 62} We concur with the trial court that a corporation's records of employee salaries and compensation are part of its books and/or records of accounts and that appellee, who requested the same as both a director and an AVPOA member, was entitled to the same. Appellants have not shown that appellee sought the material that she requested for an improper purpose. While appellants claim that such records are documents relating to "personnel issues," we concur with the trial court such "personnel *Page 17 
issues", as used in Article 12.6, refers to "hiring, firing, or disciplining an employee" and not to an employee's compensation.[2]
 {¶ 63} Appellants' second assignment of error is, therefore, overruled.
 {¶ 64} Accordingly, the judgment of the Knox County Court of Common Pleas is affirmed.
 Gwin, P.J. and Hoffman, J. concur *Page 18 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Knox County Court of Common Pleas is affirmed. Costs assessed to appellants.
[1] As memorialized in an Agreed Entry filed in the trial court on December 19, 2006, appellant's Motion to Stay execution of the court's final judgment was granted.
[2] Appellants argue that appellee would have access to employee's social security numbers if the information she requested is provided to her. We note, however, that appellants can redact the same from the employee salary information. *Page 1