DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, the father of Leah Marie S., appeals the judgment of the Huron County Court of Common Pleas, Juvenile Division, which adjudicated Leah Marie an "abused" child within the meaning of R.C.2151.031(C). The trial court reached this decision after a five day hearing. Relevantly to this appeal, two physicians rendered expert testimony regarding "shaken baby syndrome," one on the parents' behalf, and one on behalf of the Huron County Department of Job and Family Services ("HCDJFS"). *Page 2 
The trial court, in its judgment entry, found the opinions of Dr. Ruhlen, HCDJFS's expert, to be "more credible" than those expressed by Dr. Gardner, appellant' expert. Upon review of the entire record, we find the judgment supported by the manifest weight of the evidence and affirm.
 {¶ 2} Appellant raises five assignments of error for review:
 {¶ 3} "1. The trial court erred in concluding that [Leah] was an `abused' child within the meaning of R.C. 2151.131(C).
 {¶ 4} "2. The trial court committed reversible error by failing and refusing to provide findings of fact and conclusions of law despite appellant's timely request for them.
 {¶ 5} "3. The trial court committed reversible error and abused its discretion by permitting HCDJFS to recall Dr. Ruhlen so he could express his unreliable and unsupported opinions to reasonable medical certainty.
 {¶ 6} "4. The trial court committed reversible error by permitting Dr. Ruhlen to offer unreliable expert opinions about subjects for which he had no expertise.
 {¶ 7} "5. The trial court's judgment is against the manifest weight of the evidence."
 {¶ 8} We first dispense with appellant's contention that the trial court's failure to honor his timely request for findings of fact and conclusions of law is reversible error. Juv.R. 29(F)(3) requires a trial court, after adjudication, to "[u]pon request make written findings of fact and conclusions of law pursuant to Civ. R. 52." In denying appellant's *Page 3 
request, the trial court correctly stated the rule that a judgment entry which recites sufficient facts and legal conclusions can provide an adequate basis for appellate review and complies with Civ.R. 52, and, therefore, with Juv.R. 29(F)(3). Stone v. Davis (1981),66 Ohio St.2d 74; In re Schoeppner's Adoption (1976), 46 Ohio St.2d 21. "A court can substantially comply with the requirement by filing a well-written opinion, if that opinion, along with the remainder of the record, forms an adequate basis for determining the issues in the case." Strah v. LakeCty. Humane Soc. (1993), 90 Ohio App.3d 822, 836 (citations omitted). The trial court's opinion does contain facts it found relevant to its determination and the legal basis for its reasoning; we find it, together with the record, sufficient for appellate review. Appellant's second assignment of error is not well-taken.
 {¶ 9} Since appellant's third and fourth assignments of error concern Dr. Ruhlen's testimony on behalf of HCDJF, we address them jointly. First, appellant asserts error to the trial court's permission for HCDJFS to recall Dr. Ruhlen, HCDJFS's expert medical witness, in order to re-state his opinions to meet the legal standard of a reasonable degree of medical certainty. Appellant acknowledges that the decision to allow a witness to be recalled or to allow a party to reopen its case is reviewed for an abuse of discretion. Columbus v. Grant (1981),1 Ohio App.3d 96, 97; Hudkins v. Stratos, 9th Dist. No. 22188, 2005-Ohio-2155, ¶ 11. The maneuver is especially sanctioned in order to "clarify or address unresolved issues," and in bench trials, where jury considerations are not present. Id. *Page 4 
 {¶ 10} Upon review, we find no abuse of discretion. Dr. Ruhlen's medical opinions did not vary and he was simply allowed to add that his opinions were held to a reasonable degree of medical certainty. Appellant was given an additional opportunity for cross-examination and was not, therefore, prejudiced by the witness clarifying his earlier testimony. Municipality of Holland v. Warnock (March 6, 1998), 6th Dist. No. L-97-1066, citing Columbus v. Grant, supra.
 {¶ 11} Second, appellant contends that Dr. Ruhlen's testimony should not have been admitted pursuant to Evid.R. 702. A trial court's decision to admit or exclude evidence rests within its sound discretion.State v. Williams (1983), 4 Ohio St.3d 53, syllabus. Such decisions will be overturned on appellate review only if the decision was more than an error of law, but instead "unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Evid.R. 702 provides:
 {¶ 12} "A witness may testify as an expert if all of the following apply:
 {¶ 13} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 14} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 15} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply: *Page 5 
 {¶ 16} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 17} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 18} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 19} Appellant contends both that Dr. Ruhlen was unqualified and that his conclusions were scientifically unreliable. To be admissible, an expert's testimony must be both relevant and reliable. Daubert v.Merrill Dow Pharmaceuticals (1993), 509 U.S. 579, 597. The trial judge acts as a gatekeeper to ensure that evidence which is not relevant or unreliable does not reach the trier of fact. To be relevant, a witness must demonstrate expert qualifications in the relevant area of inquiry. Id. at 591. Whether a witness is qualified to render expert testimony pursuant to Evid.R. 702(B) is a threshold inquiry, Scott v. Yates
(1994), 71 Ohio St.3d 219, 221, separate and distinct from the "reliability" requirement. The witness must possess knowledge in the relevant subject area superior to the ordinary juror or layperson. Id.; Evid.R. 702(A). Further, the "fit" between an expert's qualifications and the area of inquiry determine whether the expert's opinion is relevant. Daubert, 509 U.S. at 591; Evid.R. 702(B). "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those *Page 6 
qualifications provide a foundation for a witness to answer a specific question." Berry v. City of Detroit (C.A.6, 1994), 25 F.3d 1342, 1351.
 {¶ 20} First, Dr. Ruhlen was, quite obviously, qualified to testify as to the probable cause of Leah's injuries. A medical witness does not have to be the best witness in order to be qualified as an expert.Alexander v. Mt. Carmel Med. Ctr. (1978), 56 Ohio St.2d 155, 159. Without reciting his curriculum vitae, Dr. Ruhlen had extensive training, education, and experience in pediatric medicine. He reviewed Leah's medical records and tests conducted by other physicians, and he conducted his own physical examination. While Dr. Ruhlen conceded that ophthalmology was not his specialty and would defer to an ophthalmologist to interpret Leah's retinal scans for hemorrhaging, his reading of her retinal scans was not unreliable. Appellant's argument that Dr. Ruhlen does not possess the qualifications required of an expert witness in this instance is not well-taken.
 {¶ 21} Second, appellant argues that while Dr. Ruhlen's testimony may have provided a reliable description of Leah's injuries, the method which he employed to determine shaking as the cause of her injuries was unreliable. Dr. Ruhlen testified to his experience diagnosing "shaken baby syndrome," and described how Leah's injuries fit the syndrome's typical symptoms. Specifically, Leah had sustained two subdural hematomas, enlarged optic nerves, and "hundreds" of retinal hemorrhages. He specifically ruled out alternative causes, such as being tossed in the air, falling off a couch, accidentally hitting her head on a door jam, or a near-miss motor vehicle collision. *Page 7 
His experience was sufficient to allow him to opine as to the degree of force necessary to cause her type of injuries.
 {¶ 22} "A trial court's role in determining whether an expert's testimony is admissible under Evid.R. 702(C) focuses on whether the opinion is based upon scientifically valid principles, not whether the expert's conclusions are correct or whether the testimony satisfies the proponent's burden of proof at trial." Miller v. Bike Athletic Co.
(1998), 80 Ohio St.3d 607, paragraph one of the syllabus. "In evaluating the reliability of scientific evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance." Id. at 611. "The focus is `solely on principles and methodology, not on the conclusions that they generate.'" Id. at 612, citing Daubert, 509 U.S. at 595.
 {¶ 23} Dr. Ruhlen's method entailed detailing Leah's injuries, then ruling out other possible causes based on physical evidence. This method, also known as rendering a differential diagnosis, is not unreliable or unscientific; it is a commonly accepted medical methodology. Terry v. Ottawa Cty. Bd. of Mental Retardation Developmental Delay, 165 Ohio App.3d 638, 2006-Ohio-866, ¶ 57, affirmed in part, reversed in part, 115 Ohio St.3d 351, 2007-Ohio-5023. Had Dr. Ruhlen not ruled out other possible causes, his method may have been susceptible to challenge. Id. He also listed symptoms commonly occurring in the constellation known as "shaken baby syndrome" and correlated Leah's *Page 8 
injuries with those symptoms. Retinal hemorrhaging, in particular, is a well-accepted indicator in the medical community of repetitive force applied to an infant's head. State v. Woodson, 8th Dist. No. 85727,2005-Ohio-5691, ¶ 49; State v. Butts, 10th Dist. No. 03AP-495,2004-Ohio-1136, ¶ 17. Although appellant's expert, an ophthalmologist, opined otherwise, the contrasting testimony is weighed as part of all the evidence and does not render Dr. Ruhlen's testimony unreliable. Appellant's third and fourth assignments of error are not well-taken.
 {¶ 24} We address appellant's first and fifth assignments of error jointly as both contend that the trial court's adjudication of Leah as an abused child was against the manifest weight of the evidence. "A trial court's adjudication of a child * * * must be supported by clear and convincing evidence. R.C. 2151.35(A). Clear and convincing evidence is that which produces `in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' In re Adoptionof Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford
(1954), 161 Ohio St. 469. When an appellate court reviews a trial court's adjudication to determine whether the judgment is supported by clear and convincing evidence, the reviewing court must `determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof In re Christian, 4th Dist No. 04CA10,2004-Ohio-3146, at ¶ 7, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74." In re Alexander C, 164 Ohio App.3d 540, 2005-Ohio-6134, ¶ 7. Therefore, we review the record to determine whether HCDJFS sustained its *Page 9 
burden of producing clear and convincing evidence of abuse as defined by R.C. 2151.031(C).
 {¶ 25} R.C. 2151.031(C) defines an "abused" child as one who "[e]xhibits evidence of any physical or mental injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it." "During the adjudicatory phase of the proceedings to determine whether a child is an `abused child,' the trial court does not have to find any fault on the part of a parent, guardian or custodian in order to conclude that the child is `abused' pursuant to R.C. 2151.031. All that is necessary is that the child be a victim, regardless of who is responsible for the abuse."In re Pitts (1987), 38 Ohio App.3d 1, paragraph two of the syllabus.
 {¶ 26} Sufficient credible evidence exists in support of the trial court's determination. Contrary evidence was presented, by Dr. Ruhlen and Dr. Gardner, regarding shaken baby syndrome. Dr. Gardner testified that there was little scientific support for the syndrome, that anemia and other medical conditions can also cause retinal hemorrhaging. He opined, to a reasonable degree of medical certainty, that Leah's retinal hemorrhages were caused by the intracranial hemorrhaging, and were not caused by tearing; he testified that the "shaken baby theory says that these can only be produced by tearing and shearing." As to the high number of retinal hemorrhages, he opined that they "really only occur with pressure" and not an outside force. He also opined that due to Leah's premature birth and other factors, she was "set to bleed," that is, a small amount of force or a small trauma could trigger subdural hematomas. On cross-examination, he *Page 10 
acknowledged that shaken baby syndrome has a diagnostic label and is widely recognized in the medical community; he opined, however, that shaken baby syndrome should not have a diagnostic label.
 {¶ 27} Dr. Branch, Leah's emergency room treating physician, testified that CT scans showed both old and new subdural hematomas, inflicted within the previous two weeks and the previous 24 hours, respectively. When he spoke to Leah's parents, he did not receive any history consistent with the readings of the hematomas. Based on this evidence, Dr. Branch transferred Leah to Toledo Children's Hospital. There, Dr. David Hufford evaluated Leah, conducted further testing, and concluded that Leah suffered from shaken baby syndrome. Dr. Ruhlen, after performing his "child advocacy consult," reached the same conclusion.
 {¶ 28} Leah's parents gave varying explanations for Leah's injuries, all of which were ruled out by the physicians testifying for HCDJFS. The trial court specifically found Dr. Gardner's testimony to be less credible that Dr. Ruhlen's testimony. Appellate courts generally defer to a trial court's findings regarding credibility. Davis v.Flickinger (1997), 77 Ohio St.3d 415, 419. This is especially so where Dr. Gardner's belief that shaken baby syndrome is not a valid diagnosis is contrary to the mainstream medical community. Upon review, we find competent, credible evidence supports the trial court's adjudication of abuse as defined by R.C. 2151.031(C). Appellant's first and fifth assignments of error are not well-taken. *Page 11 
 {¶ 29} For the foregoing reasons, the judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
 Peter M. Handwork, J., Arlene Singer, J., William J. Skow, J. CONCUR. *Page 1